No. 19,903.

Kenneth Clews *v*. People of the State of Colorado.

(377 P. [2d] 125)

Decided December 17, 1962.

220

Mr. RICHARD N. GRAHAM, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

CLEWS was charged with and found guilty of burglary, larceny, conspiracy to commit larceny, and bribery. A verdict of not guilty was returned to the charge of conspiracy to commit burglary. Sentences of two to four years on each count were imposed, to run concurrently. Execution of these sentences was suspended by the entry of an order for probation for a period of five years.

Clews ascribes error to the action of the trial court: (1) in admitting evidence of other transactions; (2) in permitting the Sheriff to testify concerning the accuracy of the contents of a statement given to him by Clews; (3) in refusing to direct a verdict of not guilty of the charge of bribery, (4) of the charge of burglary, (5) of the charges of conspiracy to commit burglary and conspiracy to commit larceny; (6) in rejecting tendered instructions on the defendant's theory of the case; (7) in instructing improperly regarding the date upon which the alleged incident occurred; and (8) in not protecting Clews from the action of the prosecutor in calling an alleged co-conspirator who took refuge behind the Fifth Amendment.

1. *Other transactions.* Testimony concerning two similar transactions was received in evidence over the objection of Clews. The time of their occurrence is shrouded in some uncertainty. In their brief, the People merely say that Clews was involved in two similar transactions "within the several months immediately surrounding the Reeves' Conoco incident."

It is the general rule that, on the trial of one accused of crime, proof of separate and distinct transactions, even of a similar nature, is inadmissible. To this rule there are exceptions, but, in order to make evidence of other transactions admissible, it must appear that the evidence offered falls within one of the recognized exceptions.

Time and the character of such collateral acts

are important in the determination of their admissibility. The evidence must show that they occurred at or about the time of the act in question, and there must be a substantial degree of similarity between them. *Kostal v. People,* 144 Colo. 505, 357 P. (2d) 70. In practice, the proximity in point of time and the degree of similarity is largely left to the discretion of the trial court. *Sall v. State,* 157 Nebr. 688, 61 N.W. (2d) 256; see *Perry v. People,* 116 Colo. 440, 181 P. (2d) 439. If the trial court entertains a real doubt as to whether there is present the necessary proximity of time or degree of similarity, it should exclude evidence of other transactions. *Hawkins v. State,* 224 Miss. 309, 80 So. (2d) 1.

From time to time this court has expressed itself on the matter of exceptions to the rule that evidence of misdeeds other than the one for which the accused is being tried is inadmissible. These exceptions are to be cautiously applied, since their indiscriminate use probably could result in prejudice to the defendant. *Stull v. People,* 140 Colo. 278, 344 P. (2d) 455.

■ Admission of such collateral conduct has been sanctioned when it tends directly to establish the particular crime. Its admission has usually been approved when it proves motive, criminal intent, guilty knowledge, where such form elements of the offense; or when it proves scheme, design or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the others; or when it proves identity or the absence of mistake or accident.

Admissibility of evidence to establish the exception may turn on the posture of the case. There may be instances where order of proof may be involved. Thus, such evidence should not be submitted in anticipation of a defense.

In this case there is no question of the similarity of

one of the transactions. Except for a difference in the party injured and the items taken, the transaction is a facsimile of the one of which Clews here stands charged. The other transaction is just a degree less similar. And we do not believe the trial court used its discretion unwisely on the question of time. Since the formula set out in *Stull v. People,* supra, was scrupulously followed in this case, we hold that this assignment of error is not well taken.

2. *Sheriff's testimony.* The Sheriff testified that Clews admitted the affair with which he was charged and the other transactions. He related how Clews, after fully confessing, later answered interrogation before a stenographer but refused to sign the transcription thereof. This transcription was marked Exhibit "A," and the Sheriff testified that, in his opinion, it was accurate. Objections made to the Sheriff's testimony regarding the accuracy of the transcription were overruled.

This exhibit was offered in evidence, and an objection to its admission sustained. It is said that the Sheriff's opinion concerning its accuracy was prejudicial to Clews; that such prejudice arises from an impression the jurors may have formed that it contained damaging admissions made by Clews. In short, preliminary evidence which fails to form the foundation for acceptance of the accused's statement is attacked as prejudicial.

Proper preliminary proof is necessary in many instances before certain evidence may be received. It would be dangerous doctrine to hold that such preliminary proof affords ground for error in those cases where the trial court, in its discretion, determines it to be inadequate.

Trial courts are vested with discretion in passing on the preliminary proofs essential to the reception of certain kinds of evidence, such as confessions and admissions. *Moya v. People,* 88 Colo. 139, 293 Pac. 335;

*Mitchell v. People,* 76 Colo. 346, 232 Pac. 685, 40 A.L.R. 566. Identification and voluntariness are the usual predicates for the introduction in evidence of confessions. If the trial court, in its discretion, believes one or the other of these bases has been inadequately shown, it should refuse admission, and in so doing, the trial court does not create error requiring reversal, even though the jury has heard the preliminary evidence concerning these predicates.

3. *Bribery.* Clews was found guilty of larceny, burglary, and conspiracy to commit larceny. The jury must have found and determined that he participated in these crimes. Such finding would exclude commission of bribery in connection with the transaction out of which the larceny, burglary, and conspiracy arose. And it should be noted that there was no other transaction shown to which bribery could be referred.

In law one cannot bribe himself. "To constitute bribery, the act of at least two persons is essential — that of him who gives and him who receives. The minds of the two must concur. . . . " Newman v. People, 23 Colo. 300, 47 Pac. 278. In relation to the transaction involved, we have a situation of mutual exclusion: a conviction of bribery would have excluded larceny, burglary, and the conspiracy; and the converse would be true.

4. and 5. *Directed verdict.* What we recently said in *Jordan v. People,* decided December 3, 1962, 151 Colo. 133, 376 P. (2d) 699, is equally appropriate to these contentions:

"To have directed a verdict of acquittal in this case, in the face of substantial evidence supporting guilt, would have been folly. The trial court judiciously denied the motion for such relief."

There was direct evidence, and there was evidence from which inferences could be drawn, implicating Clews in the commission of the crimes of larceny, burglary, and conspiracy to commit larceny, of which

he was accused. Under the circumstances, the trial court properly left the question of guilt to the jury for resolution.

■ On the question of insufficiency of the evidence to support the charge of conspiracy, Clews advances the novel theory, as we understand it, that a conspiracy based solely upon circumstantial evidence loses substance where admitted participants describe the activities of the transaction but never testify that the accused "participated in, or was aware of their plan" to do the illegal act. This theory does not comport with the law of criminal conspiracy.

If the participants had denied that accused "participated in, or was aware of their plan" to do the illegal act, it would still have left a jury question of circumstantial evidence versus their explicit denials. If they had disclosed accused's participation or awareness, we would have a case of circumstances corroborating their testimony — but it would still be the jury's problem to evaluate.

Concerning the comparative strength of circumstantial and direct evidence, the author says in 23 C.J.S. 559, §907, Criminal Law, that "circumstantial evidence is intrinsically like direct evidence, and not inferior thereto. It is not incapable of producing a high degree of proof equal to that derived from direct evidence." Such is our view in civil cases, *Victor v. Smilanich,* 54 Colo. 479, 131 Pac. 392, *Ward v. Teller Res. & Irr. Co.,* 60 Colo. 47, 153 Pac. 219, and we see no reason for adopting a different view in criminal cases.

It is asserted that Clews, as a patrolman, had a lawful right to enter the building being burglarized, and hence could not be guilty of burglary. *Stowell v. People,* 104 Colo. 255, 90 P. (2d) 520, is relied upon for this contention, and as supporting the proposition that there was a lack of proof of burglary by Clews.

In the Stowell case, the defendant had a key to the premises and was authorized to enter therein. In the

instant case, the accused had at most an implied license to enter, and such license extended only to a situation warranting his entry. See *Lunt v. The Post Printing & Pub. Co.*, 48 Colo. 316, 110 Pac. 203, 30 L.R.A.N.S. 60, 21 Ann. Cas. 492. We are not disposed to extend the doctrine of the Stowell case to one who enjoys the status of an implied licensee.

■ Moreover, Clews did not enter the building and take therefrom the articles in question; this was done by another who the jury obviously found was a confederate of Clews. Under these circumstances, Clew's participation, by his remaining outdoors but upon the premises while the place was being looted by his confederate, is hostile to the status of an implied licensee. In order to enjoy the status of an implied licensee, one must be performing a duty, *Lunt v. Post Printing & Pub. Co.*, supra, and not violating it.

6. *Tendered instruction.* Clews contends that the following tendered instruction should have been given under his theory of the case that "he was an accessory during and/or after the fact, not an accessory, commonly distinguished as an accessory before the fact":

"You are instructed that an accessory during the fact, as defined by statute, is one who stands by, without interfering or giving such help as he may in his power to prevent a criminal offense from being committed.

"An accessory after the fact is a person who, after full knowledge that a crime has been committed, conceals it from the proper authorities.

"If you find from all the facts and circumstances of this case that the defendant was an accessory during the fact or an accessory after the fact, he cannot be found guilty as charged in the information."

■ Should this instruction have been given in addition to the one defining accessory before the fact? Since Clews testified to facts which eliminated questions of accessories other than one before the fact, our answer must be in the negative.

Clews was on the premises but not in the building while property was being removed by the other parties. He observed the removal of this property. Being there and observing what was occurring, he used his patrol radio to advise the dispatcher that the building had been broken into. But, notwithstanding his acquaintance with the persons who were looting the building and his knowledge of what they were doing, he did not report the event taking place before his eyes at the time. His conduct as a patrolman, under the circumstances, constituted active aid and assistance to the others in the commission of crime.

Clews's conduct was more than just passive. It constituted a deception. The deception arose from the fact that he reported to his dispatcher that there had been a break-in, and gave the impression that nothing was then occurring, although it was at that time that the other parties were removing the property from the premises.

Where there is no evidence to support a theory, a refusal to instruct upon it is proper. *Mow v. People,* 31 Colo. 351, 72 Pac. 1069; *La Shar v. People,* 74 Colo. 503, 223 Pac. 59. And where the evidence shows accused to have been an accessory before the fact, instructions defining accessories during and after the fact should not be given. *People v. Schullo,* 360 Ill. 580, 196 N.E. 723.

7. *Instruction regarding dates.* Witnesses for the prosecution fixed the dates of the offenses as January 18 or 19, 1958. According to the accused, the incident took place in November 1957. Records indicated that the burglary and larceny occurred in the latter part of November 1957. It appears to be conceded that the latter is the time of the occurrence.

The trial court instructed the jury in effect that the exact proof of any given date was not required, and that, if they found that Clews committed the alleged acts any time within the three years immediately prior

to the filing of the information, they could find him guilty. It also charged, in two instructions, that possession of the building at the time by the Reeves brothers was a material allegation and had to be proved beyond a reasonable doubt, and that "if anyone or more of the material allegations in said count have not been so proved, you should not find the defendant guilty as to said count."

Clews tendered an instruction directing the jury that, unless they found the Reeves brothers to have been in possession of the building entered on the date the acts charged occurred, they must find accused not guilty.

There was testimony from one of the Reeves to the effect that they had possession when the articles in question were taken. Thus, there was evidence which, if believed, would sustain the material allegation of possession.

Repetition of instructions under various forms should be discouraged. *Castner v. People,* 67 Colo. 327, 184 Pac. 387. An instruction concerning reasonable doubt or degree of proof ordinarily need not be repeated as a part of another instruction. *Agnes v. People,* 104 Colo. 527, 93 P. (2d) 891. Refusal to give the tendered instruction appears proper in this case, since such instruction in effect was an iteration of an approved instruction.

8. *Fifth Amendment.* A confederate was called to the stand and refused to testify on the ground that his testimony would be incriminating. A proper objection was made to calling this person as a witness. The objection was based upon grounds that caused us to reverse in the case of *De Gesualdo v. People,* 147 Colo. 426, 364 P. (2d) 374, although that case had not been decided at the time of this trial.

At a conference in chambers, the district attorney advised the court that the position of this witness had been equivocal and that the district attorney had no way

of knowing that the witness would not testify. It was agreed that the court should instruct the jury that the refusal of the witness to testify on the ground that his testimony might tend to incriminate him would not be considered as any evidence against Clews.

Immediately upon returning to the courtroom, the court admonished the jury "that the refusal of this witness to testify on the ground that his answers might tend to incriminate him should not be considered by you as evidence either for or against the defendant in this case, or for any purpose whatsoever with respect to the case of the People vs. Clews." Under these circumstances, we hold that the De Gesualdo case is distinguishable and that no prejudicial error resulted from the attempted interrogation of this witness.

The judgment is affirmed, with directions that the bribery count be dismissed by the trial court.

It should be noted that, in the imposition of sentences, the trial court ordered them to run concurrently. A case reaching us in such posture contains no prejudicial error to the accused. *Clark v. People,* 105 Colo. 335, 97 P. (2d) 440; *Clarke v. People,* 53 Colo. 214, 125 Pac. 113.

We believe the last cited case contains language which should control in this case. It is as follows:

"It is urged that the counts in the information containing three could not properly be joined, although they were based upon the same transaction, for the reason that the accused could not be guilty of both false pretenses and larceny. This proposition need not be determined. The sentences are the same, and run concurrently, and even though the accused was erroneously convicted on some of the counts, he has not been prejudiced, if he was properly and legally convicted on any count. ... "

MR. JUSTICE MCWILLIAMS and MR. JUSTICE SUTTON concur.