559 P.2d 1108 (1976)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Carol D. HENDERSON, Defendant-Appellant.
No. 75-917.
Colorado Court of Appeals, Div. II.
October 21, 1976.
Rehearing Denied November 26, 1976.
Certiorari Denied February 14, 1977.
*1110 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Robert C. Lehnert, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Penfield W. Tate, II, Denver, for defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
Defendant Carol Henderson appeals from her conviction for theft over $100 in violation of C.R.S.1963, 40-4-401. We affirm.
The defendant was arrested for shoplifting two men's suits from the K-G Men's Store in Aurora. At trial, the assistant manager of the store, Mr. James Jones, testified that on the night of the arrest he observed the defendant and a female companion in the area of the men's suits. He watched the defendant's head bob up and down behind the suit rack and then saw defendant bend down and disappear from view behind the suit rack for a period of about 30 seconds. During this time, the defendant's companion, according to Mr. Jones, was constantly observing all of the customers, and employees in the store. When defendant reappeared, she immediately left the store with her companion. Jones, his suspicions aroused, followed the pair as they left the store and proceeded through the enclosed mall of the shopping center to the building exit to the parking lot. Jones testified that defendant "was walking pigeon-toed with a limp," and that there was a noticeable bulge under the mumu-type dress she was wearing. He observed defendant and her companion enter a car in the parking lot, where they sat for four to five minutes. The pair then left the car and returned to the K-G Men's Store. Defendant was then walking without a limp and without the noticeable bulge. Jones returned to the store by way of a stock room entrance, and by the time the pair had reentered the store Jones had warned several employees to watch them.
After three to five minutes, Jones, with another employee, Mr. Thomas Akerman, returned to the parking lot, entered the unlocked car in which the defendant had been sitting and discovered a large garbage-type bag containing two K-G Men's Store suits on the floor of the back seat. The suits were still on a K-G Men's Store hanger, which was a type that never left the store. If a customer purchased the suit, the red stock hanger was replaced with a plain wooden hanger and a K-G Men's Store bag was placed over it.
Jones and Akerman left the suits in the car, returned to the store, and called the police. Defendant and her companion were just leaving the store at this time, and another employee of the store, Mr. Donald Boswell, testified that he had observed the defendant during this second entry into the store conceal a sport coat, still on the hanger, under her dress and then walk out of the store. Boswell testified that he informed Jones of this and that Jones followed the pair out of the store and mall a second time. On instructions of Jones, Akerman *1111 enlisted the help of a friend with a vehicle and they followed the pair as they walked out of the parking lot and into a nearby apartment complex. During this period, Aurora Police Officer Michael Steirs, who was working off-duty in uniform at the shopping center, had arrived at the store and been informed of what had transpired. Steirs told Jones to wait until defendant and her companion went back to the car. However, when the women reappeared in the parking lot, Jones detained the two women when they were about 20 feet from the car in which they had previously been sitting. Officer Steirs immediately emerged through the stock room door, and took the women into custody. Jones then informed Steirs that he was going to retrieve the suits from the car. After recovering the suits he turned them over to Steirs and another officer who had now arrived on the scene.
Defendant testified that she was merely browsing in the store, and was looking for a sport coat for her fiance. She further testified that she was three and one-half months pregnant at the time of her arrest and that this pregnancy had inflamed a varicose vein and caused her to limp. The pregnancy was also the reason she gave for wearing the loose-fitting dress. She testified that the car belonged to an acquaintance whom they had previously met in the shopping center and who had promised to give her and her companion a ride. She explained that they entered the mall a second time, after sitting in the car, to try to find this acquaintance, and had gone to the apartment complex to find another friend who turned out not to be home. Defendant also stated on direct examination that she was a credit investigator at Levitz Furniture, and that she went to Dallas, Texas, shortly after her arrest and had an abortion under the name of Jackie Hamilton.

I.
Defendant first contends that the removal of the suits from the automobile by Jones and the subsequent surrender of custody of the items to the officer on the scene constituted an illegal search and seizure in violation of the Fourth and Fourteenth Amendments, and Colo.Const. Art. II, Sec. 7, and that the evidence therefore should have been suppressed. Defendant agrees that constitutional prohibitions on searches and seizures do not in general apply to require exclusion of evidence seized by private parties. People v. Benson, 176 Colo. 421, 490 P.2d 1287. However, defendant contends that, at the time of the search and seizure, Jones was acting under the direction of the police and not as a private person. We do not agree.
An exception to the rule exists when the private person "becomes an agent of the police by virtue of their suggestion, order, request, or participation for purposes of criminal investigation." 68 Am.Jur.2d Searches and Seizures § 14. The test as to whether a "search" or "seizure" which falls within the scope of constitutional protection had occurred is whether the private person, in light of all the circumstances of the case, must be regarded as having acted as an "instrument" or agent of the State. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, rehearing denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120.
Here, the evidence shows, as the trial court found, that Jones acted on his own when he retrieved the clothing, and there is no evidence that the officers either directed or encouraged Jones to make the seizure. It appears from the record that, during the time that Jones retrieved the suits from the car, the officers were primarily concerned with detaining and attempting to calm the defendant and her companion.
The officers' presence in the vicinity does not necessarily constitute participation in the search and seizure. In those cases in which it was held that a policeman's presence while a search was being conducted by a private individual was sufficient to make constitutional limitations applicable there was much more participation by the officer than in this case, such as an actual entry *1112 and participation in the search, Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819, a joint plan of search, Stapleton v. Superior Court, 70 Cal.2d 97, 73 Cal.Rptr. 575, 447 P.2d 967, or standing in the doorway and taking items handed out by the private party, Moody v. United States, 163 A.2d 337 (D.C.Mun.App.). Accordingly, we hold that the admission of the evidence seized by Jones was not error.

II.
Defendant next contends that the trial court's refusal to allow a late-endorsed witness to testify unless defendant took the stand unconstitutionally compelled her to waive her right to remain silent.
Pursuant to a request by the People under Crim.P. 16, defendant was required to provide a list of prospective witnesses approximately 30 days prior to trial. At the time of trial, defendant determined it would be necessary to call a witness whose name had not been provided to the prosecution. The prosecution objected to this witness testifying. The witness was being called by the defendant to testify that her niece, the defendant, was pregnant and as a result was limping at the time of the incident for which she was charged.
In a hearing in chambers, the court determined that the testimony was merely "corroborative" of certain facts alleged by defendant in her defense, and that the witness could not testify unless the defendant first testified as to the facts of her pregnancy and physical condition at the time of her arrest. Defendant contends this condition had the effect of compelling her to involuntarily waive her constitutional right to remain silent.
Even if the witness had been properly endorsed, the basic question is whether it was error for the court to have ruled that she could testify only if a proper foundation was first laid by other evidence. No objection to the court's ruling appears in the record, and it in fact appears that defendant's counsel acquiesced in the ruling. However, even if there had been an objection to the ruling, we do not find that ruling to be erroneous. Evidence which is not independently relevant is inadmissible unless its relevance is made to appear by other evidence. Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373; 31A C.J.S. Evidence § 164. Furthermore, the exclusion of evidence for lack of foundation rests largely in the discretion of the trial court. Thompson v. Norman, 198 Kan. 436, 424 P.2d 593. Here, the total exclusion of the evidence was within the trial court's discretion, and the defendant was therefore not prejudiced by the judge's requirement that a foundation be laid before the testimony would be admissible.
Defendant asserts that the testimony of the witness at trial shows that testimony to be independently admissible, and argues that it must be presumed that the trial judge had this information at the time of the hearing on the admissibility of the testimony. The record does not show what evidence the judge had available to him at the admissibility hearing, and there is no basis for such a presumption.

III.
Defendant's next assignment of error is based on the refusal of the trial court to apply its sequestration order to the assistant manager Jones after Jones had testified initially as the State's witness. Defendant agrees that the sequestration of witnesses is within the discretion of the trial court, absent abuse. Rogers v. People, 76 Colo. 181, 230 P. 391; Hampton v. People, 171 Colo. 153, 465 P.2d 394. Defendant contends, however, that prejudice resulted from the refusal to exclude Jones from the courtroom, and thus there was an abuse of discretion. We do not agree.
The record does not support defendant's contention that the refusal to exclude Jones during Boswell's testimony worked a prejudice *1113 to the defendant. When defendant called Jones to testify as her witness, counsel for the defendant was clearly successful in bringing out the uncertainties and equivocations in both Jones' and Boswell's testimony as to what was said when Jones came back into the store. Defendant asserts that Jones considerably changed his testimony upon cross-examination by the prosecution. The record does not support this allegation, but rather shows only an explanation of the hurried circumstances under which Boswell and Jones communicated, and the attendant possibilities of misinterpretation by Jones as to what Boswell actually said. There being no evidence of prejudice, we find no abuse of discretion by the trial court.

IV.
Defendant next contends the trial court erred in allowing the prosecution to inquire on cross-examination of the defendant about the various names used by her before and after her arrest in the present case, and also about her marital status at the time of arrest and at the time of trial. Defendant also assigns as error the refusal of the trial court to grant her motion for a mistrial based on the cross-examination as to these matters. Defendant characterizes these questions as intending merely to reflect on her character, and thus prejudice the jury.
The questions as to the defendant's marital status were clearly relevant to the pregnancy of defendantan issue raised by defendant herself. Questions as to the use of the name Jackie Hamilton were also relevant, as defendant had testified on direct examination concerning her use of that name.
We also find no error in the trial court's ruling that the questions as to other names used near the time of defendant's arrest in the present case were relevant as to the issue of defendant's credibility as a witness.
In a criminal case the defendant who takes the stand is subject to impeachment in the same manner as other witnesses. People v. Thompson, 182 Colo. 198, 511 P.2d 909; People v. Neal, 181 Colo. 341, 509 P.2d 598. The extent of cross-examination of a witness to determine his credibility is within the court's discretion. Tarling v. People, 69 Colo. 477, 194 P. 939. The cross-examiner is allowed to inquire about collateral matters for the purpose of impairing the credibility of the witness. Johnson v. Cousins, 110 Colo. 540, 135 P.2d 1021; Vindicator Consolidated Gold Mining Co. v. Firstbrook, 36 Colo. 498, 86 P. 313. As required by Tarling, supra, the trial court made the determination that the inquiry as to defendant's names was relevant to her credibility as a witness. No abuse of the trial court's discretion is apparent, and the ruling will not be disturbed on review.
Defendant further argues that the prosecution improperly used an F.B.I. "rap sheet" to get other arrests of defendant into evidence. The record shows that this "rap sheet" was never denominated as such in front of the jury nor introduced into evidence nor read to the jury, and that the only references to prior arrests were made by the defendant herself in the course of responding to the prosecution's questions. It is generally error to impeach any witness, including a defendant who takes the stand, by inquiring about prior offenses and arrests which did not result in a felony conviction. People v. Robles, 183 Colo. 4, 514 P.2d 630; Tarling, supra. This rule is addressed, however, to improper questions asked of a witness. The prosecution's questions in the present case were proper, and defendant volunteered information about prior arrests in non-responsive answers to those questions. Defendant therefore cannot use these answers as grounds for a mistrial. Cf. McRae v. People, 131 Colo. 305, 281 P.2d 153.

V.
Another issue raised by defendant relates to the People's calling of Mr. Robert *1114 Graff, branch manager for General Electric Credit Corp. at Levitz Furniture in Denver, to rebut defendant's testimony that at the time of her arrest she was employed as a credit investigator for Levitz Furniture. Defendant first testified to her employment in response to a question by her counsel on direct examination, and the issue was pursued on cross-examination by the prosecution. Graff testified in rebuttal for the prosecution that the defendant was not employed in the credit department at Levitz at any time near the time of her arrest, or at any other time to his knowledge.
Defendant characterizes the employment issue as collateral or even irrelevant. However, it was the defendant who initially introduced testimony about her employment on direct examination. Therefore, she was precluded from objecting to rebuttal testimony on this issue. Clark v. Giacomini, 85 Colo. 530, 277 P. 306; Grimes v. Hill, 15 Colo. 359, 25 P. 698. The trial court's admission of this rebuttal testimony was a proper exercise of its discretion and will not be disturbed on appeal. Wertz v. People, 160 Colo. 260, 418 P.2d 169.

VI.
Defendant also contends that it was error for the trial court to deny her motion for acquittal, both at the end of the State's case and at the close of the evidence. We find no error in the court's rulings.
The test to be used is the "substantial evidence" test enunciated in People v. Bennett, 183 Colo. 125, 515 P.2d 466:
The issue before the trial judge [when presented with a motion for a judgment of acquittal] is whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.
The evidence in the present case as recited above is substantial and sufficient to meet the Bennett test.

VII.
Defendant next challenges the trial court's refusal to allow her to recall Jones for additional cross-examination after Boswell had testified as to what he told Jones when Jones returned to the store after first entering the car in the parking lot and discovering the suits. The court ruled that defendant could not wait until after the testimony of a subsequent witness (Boswell) to continue cross-examination of Jones as to matters testified to also by Boswell, and that Jones would have to be called as defendant's witness to give further testimony about what Boswell had said to him. We agree with these rulings.
The rule as to cross-examination in Colorado is stated in People v. Chavez, 182 Colo. 216, 511 P.2d 883:
A reasonably full cross-examination of a witness upon the subjects of his examination in chief is the right, not the mere privilege, of a party against whom he is called; and as a rule, a denial of this right constitutes prejudicial error. However, after the right has been substantially and fairly exercised, further cross-examination becomes discretionary with the trial court.
Here, it was defendant's tactical choice rather than a ruling of the trial court that caused her to limit the initial cross-examination of Jones. There is no showing that defendant was not given a chance to exercise the right to cross-examination in a substantial and thorough manner as to matters raised during the examination-in-chief. Therefore, further cross-examination was discretionary with the trial court, and its refusal to allow Jones to be recalled for cross-examination was not an abuse of discretion.
This is especially true in view of the fact that defendant then called Jones as her own witness and elicited on direct examination *1115 the same statements and testimony as her offer of proof showed she hoped to elicit if she had been allowed to question Jones on cross-examination. Defendant complains that she was limited in her ability to put the contrasting statement of Jones before the jury in all its particulars. The record shows, however, that all possible conflicting statements of Jones and Boswell were put before the jury when Jones was called as defendant's witness, and no abuse of discretion or prejudice in the manner in which the trial court limited the subsequent cross-examination of Jones is evident from the record. Therefore, the ruling of the trial court will not be disturbed on review. Simms v. People, 174 Colo. 85, 482 P.2d 974.

VIII.
Defendant argues that it was reversible error for the court to allow Boswell to testify that he saw the defendant, shortly after the time she allegedly shoplifted the suits, slip a sport coat under her dress and walk out of the store. The testimony was admitted as evidence of a common plan, scheme, or design under the rule of Stull v. People, supra. The procedural requirements and cautionary instructions of Stull were properly observed in this case.
Defendant claims that the transaction was not sufficiently similar to warrant its admission. It is the general rule that in a criminal trial, proof of separate and distinct transactions, even of a similar nature, is inadmissible. Clews v. People, 151 Colo. 219, 377 P.2d 125. There are exceptions to the rule, however, and such evidence may be admissible if it tends to prove motive, criminal intent, or guilty knowledge when such are elements of the offense; or if it indicates scheme, design, or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the others; or if it is probative of identity or the absence of mistake or accident. Clews, supra. Underlying these exceptions is the basic premise that the collateral acts must tend to establish directly the particular crime charged. Clews, supra. Hence, the true issue is whether the evidence of similar transactions is sufficiently relevant and probative as to commission of the crime for which the defendant is being tried to warrant its admission. See Clews, supra; Perry v. People, 116 Colo. 440, 181 P.2d 439.
The transaction here was in close proximity to the time and place of the acts with which defendant was charged. The nature of the act, viewed in the light most favorable to the prosecution, was relevant to show scheme, plan or design to shoplift clothing from the store. People v. Moen, 186 Colo. 196, 526 P.2d 654. The evidence was also admissible as probative of the modus operandi in the theft for which defendant was charged. Pabst v. State, 169 So.2d 329 (Fla.App.). See People v. Dago, 179 Colo. 1, 497 P.2d 1261; § 16-10-301, C.R.S. 1973 (1975 Cum.Supp.) (effective April 3, 1975).
Defendant's contention that only "completed transactions" may be admitted is without merit. "[T]he rule applies without regard to whether such other crime was a completed crime or a criminal attempt." 1 C. Torcia, Wharton's Criminal Evidence § 240 at 533 (13th ed.).

IX.
The final assignment of error concerns the giving of the following instruction over defendant's objection:
If any person willfully conceals unpurchased goods, wares, or merchandise owned or held by and offered or displayed for sale by any store or other mercantile establishment, whether such concealment be on his own person or otherwise and whether on or off the premises of said store or mercantile establishment, such concealment constitutes prima facie evidence that such person intended to commit the crime of theft.
Defendant contends that the only evidence of concealment came from Boswell, concerning the similar transaction involving the sport coat, and that the giving of the *1116 concealment instruction, since it was based solely on the similar transaction effectively negated the instruction as to similar transactions and thus prejudiced the defendant.
Defendant's contention would have merit if her assumption as to the lack of evidence of concealment were correct. However, the evidence concerning the theft of the suits is sufficient to support the trial court's ruling, on defendant's objection to the instruction, that a jury could find from the evidence that the defendant had concealed the suits.
Judgment affirmed.
COYTE and VanCISE, JJ., concur.