580 P.2d 820 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
David PIGFORD, Defendant-Appellant.
No. 76-934.
Colorado Court of Appeals, Division II.
April 6, 1978.
Rehearing Denied April 27, 1978.
Certiorari Granted June 26, 1978.
*821 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., J. Stephen Phillips, Chief, Crim. Appeals, Appellate Section, Asst. Atty. Gen., Anthony M. Marquez, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colo. State Public Defender, James F. Dumas, Jr., Chief Deputy State Public Defender, Ilene P. Buchalter, Deputy State Public Defender, Denver, for defendant-appellant.
RULAND, Judge.
The defendant, David Pigford, appeals his jury conviction of first degree burglary and criminal attempt to commit first degree sexual assault. We affirm.
Evidence presented by the People showed that the complainant, the defendant, and others were at the apartment of the complainant's friend and the defendant's sister, on the evening of March 27, 1976. At about ten o'clock the complainant returned to her apartment which was two doors away.
Shortly after turning out the lights and locking the door, the complainant heard the door rattle. She got up, looked through the screen, and saw a man whom she later identified as the defendant. She tried to block the door with a table, but the man broke a glass window in the door and unlocked the door. He pushed the door open, knocking the complainant to the floor, and stepped or fell on her. He hit her several times about the face, telling her that all he wanted to do was to have sexual intercourse and that if she did not stop screaming, he would kill her. The complainant broke free, and ran from the apartment, called out to her sister who lived in the adjoining apartment, and fainted on a nearby lawn.
The defendant's sister was in her kitchen when she heard a scream from outside. She looked out and saw the complainant lying on the ground and a figure resembling her brother running away. She also heard someone yell, "Pigford!" She helped the complainant into her apartment and then called her brother's nearby apartment. On the second attempt she reached him and told him to come back to her apartment.
When the police arrived the defendant was standing outside his sister's apartment. He was overheard to say, "What chance do I have?" He had blood on his hands, apparently from some small cuts. When the complainant was brought into his presence she became hysterical and indicated that the defendant was her assailant.
Pursuant to § 16-10-301(2), C.R.S.1973 (1976 Cum.Supp.), the trial court conducted a hearing to determine whether evidence of another criminal episode involving the defendant could be introduced pursuant to subparagraph (1) of the statute to show "a common plan, scheme, design, identity, modus operandi, motive, guilty knowledge or intent." That evidence showed that on *822 December 7, 1975, a man identified as the defendant broke into an apartment located in the same apartment complex in which the complainant lived, and attacked a woman whom he had met for the first time earlier that evening. Shortly after the woman had gone to bed, the defendant entered her apartment by breaking the glass window on the door. He raped her, threatening to kill her if she told anyone. He was armed with a knife, attempted to cover the woman's face, and cut the telephone cords as he left.
It appearing that the People had established a prima facie case against the defendant through the complainant's testimony, as required by subparagraph (4) or the statute, and that the episodes were similar, the trial court ruled that the evidence was admissible, thus determining pursuant to subparagraph (2) of the statute, that the prejudice which would result to the defendant was outweighed by the "evidentiary value of the evidence." Pursuant to subparagraph (3) of the statute, the jury was instructed (without objection to the form of the instruction) that the evidence was admissible for the limited purpose of showing intent, plan, scheme, or design.
Relying on such cases as United States v. Goodwin, 492 F.2d 1141 (5th Cir. 1974), and United States v. Ring, 513 F.2d 1001 (6th Cir. 1975), the defendant asserts that complainant's testimony to the effect that he knocked her down, struck her, and told her that he was going to have sexual intercourse with her, if believed, clearly demonstrated an intent to commit sexual assault. Therefore, the defendant contends that admission of evidence relative to the December episode constituted reversible error. He also argues that the two episodes lacked sufficient similarity to permit an inference of common plan, scheme or design.
We recognize that in sexual assault cases, evidence of similar transactions was formerly limited to episodes involving the victim of the offense charged, and was usually admitted solely for the purpose of showing criminal intent or plan, scheme, and design. See, e. g., Huerta v. People, 168 Colo. 276, 450 P.2d 648 (1969); Dockerty v. People, 74 Colo. 113, 219 P. 220 (1923). However, the General Assembly has now authorized the use of such evidence in sexual assault cases, regardless of whether the evidence of similar episodes relates to acts with persons other than the complaining witness and even if a prima facie case of the defendant's intent is first established. And, because a similar modus operandi was used on each occasion, we conclude that the trial court did not abuse its discretion in admitting this evidence to show common design, scheme or plan. See Howe v. People, 178 Colo. 248, 496 P.2d 1040 (1972).
The defendant contends that, nonetheless, admission of the evidence was erroneous because the episodes were not so similar as to permit an inference of common identity or modus operandi. We also disagree with this contention.
Determination of the relevancy and potential prejudice of evidence in a criminal trial is within the sound discretion of the trial court. People v. Bynum, Colo., 556 P.2d 469 (1976). Here, the episodes were sufficiently similar so that common identity and modus operandi could properly be inferred, and thus, the trial court did not abuse its discretion. See People v. Henderson, Colo.App., 559 P.2d 1108 (1976).
Judgment affirmed.
SMITH, J., concurs.
BERMAN, J, dissents.
BERMAN, Judge, dissenting:
Respectfully, I dissent.
I cannot subscribe to the majority's expansive interpretation of § 16-10-301, C.R.S.1973 (1976 Cum.Supp.), an interpretation which I view as unjustifiably discarding long-standing and soundly reasoned limitations on the use of evidence of similar transactions in sexual offense prosecutions and criminal cases generally.
It is a fundamental principle of evidence law that "the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially *823 relevant to some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." McCormick on Evidence § 190 (E. Cleary 2d ed. 1972). And, that principle has been consistently recognized in Colorado. E. g., People v. Ihme, 187 Colo. 48, 528 P.2d 380 (1974); People v. Henderson, Colo.App., 559 P.2d 1108 (1976). Because the danger of prejudice is magnified when the prior acts are as repugnant as those involving sexual depravity, this state, as others, has long limited proof of prior sexual acts to those involving the complaining witness. See, e. g., Huerta v. People, 168 Colo. 276, 450 P.2d 648 (1969); Dockerty v. People, 74 Colo. 113, 219 P. 220 (1923).
Accordingly, in the absence of supporting language in the statute, I deem the majority's abandonment of such a limitation inappropriate. Criminal statutes, including those governing procedure in criminal prosecutions, are to be strictly construed in favor of the accused and as written, People v. Wright, Colo.App., 559 P.2d 249 (1976), aff'd, Colo., 573 P.2d 551 (1978), particularly when such statutes are in derogation of the common law. Stowell v. People, 104 Colo. 255, 90 P.2d 520 (1939).
Even assuming, however, that the majority's construction of the statute is correct in this regard, I do not agree in its assessment that the prior criminal episode here revealed a "modus operandi" sufficient to justify application of the statute. While conceivably a single offense might involve so unusual and distinctive a method as to identify a later crime as the handiwork of the defendant, the method employed here§ forcible entry of an apartment by breaking the door, and coercion of the occupant to submit to sexual acts by threat of force falls far short of such distinctiveness. See State v. Sauter, 125 Mont. 109, 232 P.2d 731 (1951).
Indeed, the dissimilarity of the method employed in the offenses involved here is significant. The assailant in the prior offense was armed with a knife, attempted to cover the victim's face during the rape, and cut the apartment's telephone cords as he left. None of these features accompanied the offense for which defendant here was on trial.
In such circumstances, I would hold that the trial court erred in admitting the evidence of defendant's prior criminal act in this case, and that such error cannot be deemed harmless.