**Craigston R. HONEY, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 84SC31.

Supreme Court of Colorado, En Banc.

Feb. 10, 1986.

David F. Vela, State Public Defender, Barbara S. Blackman, Chief Appellate Deputy, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Appellate Section, Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari in *People v. Honey,* No. 82CA0887 (Colo.App. Sept. 22, 1983), to consider whether the district court erred in excluding opinion evidence regarding the truthfulness of the complaining witness. The court of appeals held that the district court's exclusion of the evidence was proper because a trial court has discretion to exclude irrelevant and immaterial matters. Although we determine that the district court committed error in ruling that the defendant failed to establish a foundation sufficient to enable him to introduce opinion evidence about the complaining witness's character for truth and veracity, the error was harmless. We therefore affirm the judgment of the court of appeals.

Meyer Kadovitz managed the apartment complex in which Craigston R. Honey, the defendant, shared an apartment with Lily Jackson. When Jackson had not paid her August rent to Kadovitz by August 5, 1981, Kadovitz posted a three-day notice to pay or leave the premises. On August 8, Kadovitz notified the Gladstone Company, the management company for the apartment complex, to begin eviction proceedings against Jackson. On August 14, Jackson brought a blank money order to Kadovitz's apartment and gave it to Kevin Wright, Kadovitz's roommate. Wright cashed the money order on August 18, and on August 28, Kadovitz deposited $1012 to the Gladstone Company GNC account, an amount which included Jackson's rent money.

Although Kadovitz left a message on Gladstone's answering service on August 14 or 15 that Jackson had paid her rent, on August 26, Gladstone Company posted a formal eviction notice on Jackson's door. On August 27, the defendant went to Kadovitz and Wright's apartment to discuss the eviction proceedings. When Kadovitz and Wright refused to answer the door, the defendant kicked the door in and slapped Kadovitz. Kadovitz called the police, and an officer charged the defendant with three city ordinance violations: disturbing the peace, assault, and destruction of private property.[1]

On August 28, 1981, the defendant allegedly again went to the manager's apartment, and with the aid of a friend, shoved Kadovitz and Wright, who were in the hall, into the apartment. The defendant told Kadovitz to drop the charges he had filed against the defendant the night before, and when Kadovitz refused, the defendant punched him in the face, breaking his cheekbone. As a result of this second incident, the defendant was charged with one count of second-degree assault, § 18–3–203(1)(a), 8 C.R.S. (1973), and one count of intimidating a witness, § 18–8–604(1), 8 C.R.S. (1973). Immediately before trial the prosecution reduced the second-degree as-

---

1. The defendant pleaded guilty to the assault and destruction of property charges, and the disturbing the peace charge was dropped. Honey's conviction and sentence in municipal court are unconnected to the assault conviction in this case.

sault count to third-degree assault. § 18–3–204, 8 C.R.S. (1973).

During the trial defense counsel sought to introduce the opinion testimony of Garry Gladstone, Kadovitz's employer, that Kadovitz was dishonest. In order to establish a foundation for the opinion testimony, Gladstone testified outside the presence of the jury that he employed Kadovitz as an apartment manager during the summer of 1981; that he saw Kadovitz at least once a week and probably two or three times a week; that Kadovitz lied about whether work had been done on apartments, whether they were ready to rent, and whether a unit had been cleaned; and that when Kadovitz said he would get deposits and records in and follow company procedure, he did not always do what he said he would do. Gladstone also stated that because there was an apartment policy prohibiting pets, he told Kadovitz to get rid of his dog. Kadovitz told Gladstone that the dog belonged to his parents and would only be there for the weekend when in fact the dog belonged to Kadovitz. Despite Gladstone's demands that Kadovitz remove the dog, it was always in the apartment. Gladstone stated that he believed that Kadovitz was "lacking a great deal in honesty."

Although the district court refused to admit Gladstone's opinion testimony regarding Kadovitz's character for truth and veracity on the basis that defense counsel had failed to establish a sufficient foundation, Gladstone testified before the jury that he fired Kadovitz on August 19, 1981, because he failed to get apartments ready to rent, because he did not return calls after Gladstone left messages on his answering machine, and because Gladstone had heard that he was leaving town. On direct examination, Kadovitz testified that he was fired by Gladstone for failing to do his job. On cross-examination, Kadovitz admitted that occasionally when tenants would pay the rent late or in installments he would take partial payments and credit one apartment as paid in full while listing other apartments as vacant.

The jury found the defendant guilty of third-degree assault but acquitted him of intimidation of a witness. The court of appeals affirmed the defendant's conviction, determining that the district court had discretion to exclude Gladstone's testimony and that the court's ruling was not an abuse of discretion. We granted certiorari on the issue of whether the district court erred in refusing to admit Gladstone's testimony regarding his opinion of Kadovitz's character for truth and veracity.

CRE 608(a) [2] allows a witness to be impeached with an opinion as to the witness's truthfulness or untruthfulness, but a sufficient foundation for the testimony is required. *See United States v. Rios,* 611 F.2d 1335 (10th Cir.1979) (trial court did not abuse its discretion in refusing to admit an opinion regarding the truthfulness of the witnesses' family when the opinion did not deal specifically with the witnesses), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981); CRE 401, 602. "[O]pinion testimony is a personal assessment of character. The opinion witness is not relating community feelings, the testimony is solely the impeachment witness' own impression of an individual's character for truthfulness." *United States v. Watson,* 669 F.2d 1374, 1382 (11th Cir.1982). In deciding whether to admit an opinion as to a witness's credibility, a court may consider how well the witness knows the witness to be impeached and under what circumstances the witness giving the opinion knew the witness to be impeached. *United States v. Mandel,* 591 F.2d 1347, 1371 (4th Cir.), *vacated on other grounds by an equally divided court,* 602 F.2d 653 (1979) (en banc), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *cf. Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (acquaintance with defendant and community re-

---

**2.** CRE 608 provides in pertinent part:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limita-

tions: (1) the evidence may refer only to character for truthfulness or untruthfulness. . . .

quired for admission of reputation evidence).

The People assert that Colorado courts have not interpreted CRE 608(a) to allow impeachment of a witness's credibility with proof of specific instances of prior conduct. *See People v. Cole,* 654 P.2d 830 (Colo. 1982) (extrinsic evidence of prior conduct may not be used to impeach the credibility of the witness); *People v. Taylor,* 190 Colo. 210, 545 P.2d 703 (1976) (trial court erred in admitting extrinsic evidence of misconduct that maligned policeman's character). The cases the People rely on relate only to specific instances of prior conduct, however, not to opinion evidence regarding a witness's character for truthfulness or untruthfulness.[3]

In this case, there is no question that Kadovitz's credibility was relevant and that Gladstone had personal knowledge of Kadovitz's character for truthfulness. Gladstone saw Kadovitz at least once a week and sometimes two or three times a week over a two month period. During this period Gladstone had ample opportunity to observe whether Kadovitz did the work that he said he would do, whether Kadovitz deposited rental payments and kept proper records, and whether Kadovitz was truthful about his dog. CRE 608(a) imposes no requirement that a witness who gives an opinion have a long-term acquaintance with the witness to be impeached, *see* 3 J. Weinstein and M. Berger, *Weinstein's Evidence* § 608[04], at 608–20 (1985), and federal courts have not required any minimum period of acquaintance. *See United States v. Haimowitz,* 706 F.2d 1549, 1560

(11th Cir.1983) (defendant's credibility may be impeached by a witness who had known defendant for ten years and by a former law partner), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *Watson,* 669 F.2d at 1382 n. 6 (trial court erred in denying defendant opportunity to impeach government witness with testimony of witness who had lived near government witness for six years and worked with him on two or three occasions for less than an hour on each occasion, a witness who had employed the government witness for three months, a witness who had supervised the government witness for approximately two weeks, and a government employee to whom the government witness had made a false complaint). Here there was ample foundation for Gladstone's opinion that Kadovitz was untruthful. The district court erred in not admitting Gladstone's opinion.[4]

The defendant asserts that the failure of the trial court to allow impeachment by opinion evidence violated his constitutional rights to compulsory process and due process. *See Watson,* 669 F.2d 1374 (violation of sixth amendment right to compulsory process where defendant prohibited from calling witness to offer opinion testimony about the untruthfulness of key governmental witness); *United States v. Davis,* 639 F.2d 239 (5th Cir.1981) (exclusion of opinion and reputation evidence concerning prosecution's key witness violates defendant's sixth amendment right to compulsory process); *Steinmark v. Parratt,* 427 F.Supp. 931 (D.Neb.1977) (exclusion of reputation evidence concerning prosecu-

---

3. This court held in *People v. Sexton,* 192 Colo. 81, 86, 555 P.2d 1151, 1155 (1976) that although a defendant's reputation in the community for a specific trait may be admissible, "the witnesses' opinions and specific incidents are generally excluded." *Sexton* was decided before the adoption of CRE 608(a), which is identical to Fed.R. Evid. 608(a). Fed.R.Evid. 608(a) changed the common law practice that purported to exclude opinion testimony, but that in fact allowed witnesses to give opinions disguised as reputation evidence by explicitly allowing opinion evidence regarding character for truthfulness or untruthfulness. *United States v. Lollar,* 606 F.2d 587 (5th Cir.1979); Fed.R.Evid. 608(a) advisory committee note; 3 D. Louisell and C. Mueller,

*Federal Evidence* § 304, at 215–23 (1979); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 608[04], at 608–19 through 608–20 (1985); 7 J. Wigmore, *Evidence in Trials at Common Law,* §§ 1980, 1985 and 1986, at 206, 231–249 (1978).

4. This court will not reverse a trial court's rulings regarding evidentiary questions absent an abuse of discretion or unless the ruling is clearly erroneous. *People v. Gallegos,* 644 P.2d 920 (Colo.1982) (sufficiency of evidence to qualify witness not subject to reversal unless clearly erroneous); *People v. Henderson,* 38 Colo.App. 308, 559 P.2d 1108 (1976) (exclusion of evidence because of lack of foundation rests in discretion of trial court).

# 1304

tion's sole witness violates due process). This court has not ruled on the issue of whether exclusion of opinion evidence that impeaches a prosecution witness is a violation of a defendant's sixth amendment right to compulsory process or right to due process under the fourteenth amendment and article II, section 16 of the Colorado Constitution. However, because the defendant in this case had an opportunity to confront and cross-examine Kadovitz and also to elicit testimony from Gladstone regarding Kadovitz's unreliability as an apartment manager, the district court did not commit constitutional error.

■■■ The trial court's erroneous evidentiary ruling requires reversal unless this court finds that the ruling was harmless error. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Callis v. People*, 692 P.2d 1045 (Colo.1984).[5] In this case, Kadovitz was not the sole witness to the assault. Both Kadovitz and Wright testified that the defendant hit Kadovitz. In addition, other evidence supported the verdict; the defendant admitted that he injured the knuckle of his right hand on the evening of the assault, although he claimed the injury was incurred while "slap boxing" with friends. Moreover, defense counsel was allowed to cross-examine Kadovitz regarding the handling of rental payments, and Gladstone testified before the jury about his reasons for firing Kadovitz. In view of the evidence supporting the verdict and the impeachment of Kadovitz, the district court's exclusion of Gladstone's opinion testimony was harmless beyond a reasonable doubt. *Cf. United States v. Basic Construction Co.*, 711 F.2d 570 (4th Cir.) (exclusion of opinion evidence regarding prosecution witness's truthfulness is harmless where it is highly unlikely that it would have affected the outcome because the prosecution witness had already been thoroughly impeached, the impeachment witness was prejudiced because he was an employee of the complaining witness, and the impeachment witness's testimony was repetitive), *cert. denied* 464 U.S. 956, 104 S.Ct. 371, 78 L.Ed.2d 330 (1983).

Judgment affirmed.

---

5. Had we determined that the trial court's refusal to admit the opinion evidence was constitutional error, we would be required to determine if the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *cf. People v. Blair*, 195 Colo. 462, 579 P.2d 1133 (1978). The other evidence in this case meets this higher standard.