The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Steven **HOLMBERG**, Defendant–Appellant.

No. 98CA1953.

Colorado Court of Appeals, Div. V.

Dec. 9, 1999.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Rodney G. Loomis, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Steven Holmberg, appeals from the judgment of conviction entered after he was found guilty in a bench trial of three counts of possession of a controlled substance, one count of possession of one ounce or less of marijuana, and one count of possession of marijuana concentrate. The issues on appeal relate only to the trial court's denial of defendant's motion to suppress. We affirm.

Defendant filed a pretrial motion in which he alleged that the search of his fanny pack by private security officers when he attempted to enter a rock concert was unlawful, and that the contraband found in his bag should therefore be suppressed. He also claimed that the police lacked probable cause to arrest him.

The evidence presented at the suppression hearing established that defendant had purchased a ticket to a rock concert held at a facility owned by the town of Vail and leased

to the tax-supported Vail Recreation District (District). The District leased the facility to the private promoter that sponsored the concert.

The District requires promoters to provide security during events held at the facility. Security for the concert defendant attempted to attend was provided by a private company. Several uniformed off-duty police officers were included in the private company's security force the night of the event. One of those police officers testified that the officers were paid by the private company, and that their primary function was to provide "security," not to investigate criminal activity.

The security personnel stationed at the entrance to the facility checked patrons' bags for weapons and alcohol. There were signs indicating that backpacks and similar items were not permitted at the concert and patrons were told that, to avoid a search, they could return their packs to their cars and then be readmitted to the concert. Most of the individuals who conducted the searches were civilians employed by the private security company; the off-duty police officers were not involved in searching patrons' belongings.

The person who discovered the contraband in defendant's fanny pack testified that he had not been hired by the private security company, but was a "weekend supervisor" for the arena and was paid by the District. During the concert he was a "floater," and performed various odd jobs including providing "backup security." He indicated that, prior to the concert, the private security company held a meeting at which it briefed its security staff regarding their duties and security issues which might arise at the concert. The witness and the off-duty police officers attended the meeting with the civilian security personnel, but neither the District nor the local police department participated in the briefing.

The District employee testified that after defendant was patted down by a private security guard at the "first wave" of security, he was referred to the "second wave," where the District employee was stationed. He testified that he asked defendant to open his fanny pack, and that when defendant complied, a baggie fell out. When the District employee shone his flashlight on the baggie, he saw that it contained mushrooms, which, based on the earlier briefing, he thought to be a controlled substance. One of the off-duty police officers who had observed the employee's encounter with defendant then came forward and escorted defendant away.

Defendant testified that after he went through the "first wave" of security, a uniformed police officer told him to open his fanny pack, and that when he did so, the officer reached in and removed the baggie, then immediately handcuffed and arrested him.

In its order, the trial court made findings of fact consistent with the testimony of the District employee who had searched defendant's fanny pack. Based on these factual findings, the court concluded that the District employee was not an agent of the state for purposes of law enforcement, and that, because it did not involve state action, the search was not illegal. The court also concluded that the police had probable cause to arrest defendant. Accordingly, the court denied defendant's motion to suppress, and defendant appeals from that ruling.

In ruling on a motion to suppress, the determination of the credibility of the witnesses and the weight of the evidence is solely within the province of the trial court. *See People v. Williams,* 908 P.2d 1157 (Colo. App.1995). Thus, if the trial court's factual findings are adequately supported by the record and the court applied the correct legal standard in reaching its conclusion, we will not disturb its determination. *People v. Robledo,* 832 P.2d 249 (Colo.1992).

## I.

■ Defendant contends that the trial court erred in its determination that the search of his fanny pack did not implicate the Fourth Amendment because it was not conducted by an agent of the police. We conclude that there was no agency relationship between the District employee and the police and, therefore, we disagree.

■ If a person is an agent of the police for purposes of criminal investigation, evidence obtained from an unlawful, privately conducted search must be suppressed. This rule prevents police authorities from circumventing constitutional requirements by directing a third party to perform a search that would be improper if conducted by the police. *People v. Chastain*, 733 P.2d 1206 (Colo.1987); *People v. Loggins*, 981 P.2d 630 (Colo.App.1998).

■ Conversely, private or non-law enforcement government actors come within the purview of the Fourth Amendment only when their searches of individuals have no other purpose but to aid law enforcement investigatory or administrative functions. *See United States v. Attson*, 900 F.2d 1427 (9th Cir.1990), *cert. denied*, 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403 (1990) (Fourth Amendment was designed to apply to the conduct of law enforcement officials engaged in criminal investigations or breaches of other statutory or regulatory standards); see also *People v. Loggins, supra* (Fourth Amendment applies only to searches and seizures conducted by state officials and designed to elicit a benefit for the government in an investigatory or administrative capacity); *Commonwealth v. Cote*, 15 Mass.App.Ct. 229, 444 N.E.2d 1282 (1983) (mere employment by an arm of government is not enough to make an actor a government agent for purposes of the Fourth Amendment).

■ The fact that the person conducting a search might have intended to assist law enforcement does not transform him or her into a law enforcement agent so long as he or she had a legitimate independent motivation for engaging in the challenged conduct. *See United States v. Shahid*, 117 F.3d 322 (7th Cir.1997); *cert. denied*, 522 U.S. 902, 118 S.Ct. 254, 139 L.Ed.2d 182 (1997); *see also State v. Ellingsworth*, 966 P.2d 1220 (Utah App.1998) (although search may benefit law enforcement, test is whether actor has an independent intent and purpose in conducting the search).

■ Similarly, the fact that the challenged conduct took place at a public facility, such as here, does not affect the character of what otherwise is non-law enforcement conduct. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir.1995) (searches conducted by private security company at concert promoted by private company held at a public facility leased from state university did not constitute state action under civil rights statutes).

Here, the record indicates that security at the concert was provided by a private entity and that the private security company, not law enforcement officials, were responsible for training the personnel who worked the night of the concert, including the District employee who searched defendant's fanny pack.

The record further indicates that, although the District required the promoter to provide security at all functions held at the arena to protect the District's liquor license, security was also necessary at these events to protect the private interests of the promoter in ensuring the safety of its patrons.

And, although the District employee acted, in part, to further the District's interests, he was also acting in furtherance of the promoter's private interests. In doing so, he did not act at the direction of or for the benefit of law enforcement officials. Nothing in the record suggests that the District or its employees, including the person who searched defendant here, performed any law enforcement functions. Indeed, the trial court found, with record support, that although the District was supported by local taxes, its sole "governmental" function was to operate the arena and a golf course.

Moreover, the mere presence of police officers, absent some form of participation in the search, did not establish an agency relationship. *See People v. Henderson*, 38 Colo.App. 308, 559 P.2d 1108 (1976) (although police officer was nearby when store manager removed shoplifted items from defendant's car and gave them to officer, manager was not an agent of the police and his actions did not constitute an illegal search and seizure because he was not acting at the officer's direction); see also *United States v. Smythe*, 84 F.3d 1240 (10th Cir.1996) (if government agent merely witnesses private person's search, requisite government action implicat-

ing constitutional concerns is absent; police must affirmatively instigate, orchestrate, encourage, or exceed scope of private search to trigger application of Fourth Amendment).

Thus, it is immaterial here that an off-duty police officer had observed the search and had arrested defendant after the baggie fell out of his fanny pack. *See People v. Chastain, supra; People v. Henderson, supra.* Indeed, nothing in the record suggests that the police coerced, dominated, or otherwise directed the District employee's actions or those of the private entity's security personnel. Nor does the record suggest that the search was intended to assist law enforcement efforts.

■ The determination whether a third party is acting as an agent of the police requires examination of the totality of the circumstances. *People v. Aguilar,* 897 P.2d 84 (Colo.1995). The defendant has the burden of establishing that the individual who engaged in the challenged conduct was acting as a police agent. *People in Interest of P.E.A.,* 754 P.2d 382 (Colo.1988).

Here, based on that standard, we find no error in the trial court's conclusion that, while the District employee cooperated with the police, his cooperation did not rise to the level of an agency relationship. *See People v. Chastain, supra* (security guard who did not receive compensation from a public agency or act at the direction of the police was not a police agent); *People v. Lopez,* 946 P.2d 478 (Colo.App.1997) (police did not initiate, induce, or acquiesce in actions of civilian, and therefore, no agency relationship existed).

## II.

■ Defendant next contends that the trial court erred by admitting hearsay testimony at the suppression hearing and that, without that testimony, there was insufficient evidence to support the court's conclusion that the police had probable cause to arrest defendant. More specifically, defendant maintains that the off-duty police officer's testimony about what the arresting officer reported to him regarding the circumstances leading up to defendant's arrest was inadmissible hearsay and that without either that testimony or the arresting officer's testimony, the evidence did not support the trial court's conclusion that defendant's arrest was supported by probable cause. Again, we disagree.

Initially, we note that the trial court indicated in its order that it did not consider the challenged testimony in reaching its conclusion that defendant's arrest was supported by probable cause.

■ Probable cause to arrest exists when, under the totality of the circumstances, the "objective facts and circumstances" warrant the belief by a reasonable and prudent person, in light of that person's training and experience, that an offense has been committed and that the defendant committed it. *People v. McCoy,* 870 P.2d 1231, 1235 (Colo. 1994); *see also People v. Thompson,* 793 P.2d 1173 (Colo.1990); *People v. Ratcliff,* 778 P.2d 1371 (Colo.1989).

■ Contrary to defendant's implicit contention, this is an objective, not a subjective, standard of reasonableness. Thus, although as a practical matter an arresting officer's testimony will generally be the most effective evidence of probable cause, such testimony is not critical to a determination whether the officer had probable cause to arrest. Hence, the absence of the arresting officer's testimony at a suppression hearing does not necessarily preclude a finding that the officer had probable cause to arrest.

Here, the District employee testified that when defendant opened his fanny pack, a baggie fell out which contained mushrooms which he thought to be hallucinogenic. He also indicated that the arresting officer was standing no more than ten feet behind him, that he knew of nothing obstructing the officer's view of the employee's interaction with defendant, and that after the baggie fell out of defendant's pack, the officer was "right there" within "seconds."

The off-duty police officer who testified at the suppression hearing indicated that he was the arresting officer's supervisor and that the arresting officer had been a narcotics detective for nearly six years.

The contents of the baggie tested positive for psilocyn, which is a Schedule I controlled substance. Sections 18–18–203(2)(c)(XXI) & (XXII), C.R.S.1999. As pertinent here, possession of a Schedule I controlled substance is a class 3 felony. Section 18–18–405(2)(a)(I), C.R.S.1999.

Even if we ignore the off-duty officer's challenged testimony, our review of the other testimony presented at the suppression hearing supports the trial court's conclusion that defendant's arrest for possession of a controlled substance was supported by probable cause. Accordingly, we need not address defendant's claim that the trial court erred by admitting the challenged testimony.

The judgment is affirmed.

Judge TAUBMAN and Judge KAPELKE concur.