No. 25065.

THE PEOPLE OF THE STATE OF COLORADO *v.* ROBERT H. BENSON, A/K/A JOHN JACOBS.
(490 P.2d 1287)

Decided November 29, 1971.

STANLEY F. JOHNSON, District Attorney, RICHARD W. DANA, Assistant, RALPH S. JOSEPHSOHN, Deputy, A. JAMES MORAVEK, Deputy, for plaintiff-appellee.

WILLIAMS, TRINE and GREENSTEIN, WILLIAM D. NEIGHBORS, JOHN A. STUDHOLME, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS is a companion case to *People v. Glaubman*, 175 Colo. 41, 485 P.2d 711. The defendant here, Robert H. Benson, is the same person referred to in the *Glaubman* opinion as Robert Benson, and he will be so referred to in this opinion. Glaubman and Benson filed separate motions to suppress and were accorded separate hearings. However, the evidence sought to be suppressed as to each defendant is substantially the same evidence, except for some which was seized from their persons incident to the respective arrests. The same affidavit and search warrant upheld in *Glaubman* is attacked here. Reference

is made to the *Glaubman* opinion for a statement of the facts.

The decision in *Glaubman* disposes of Benson's challenge to the affidavit for its failure to set forth sufficient underlying circumstances to support the affiant's conclusions and the challenge to the reliability of the informant. In addition, Benson raises two issues not considered in *Glaubman* which will be discussed in the two succeeding sections.

I.

■ Did the warrant, issued for a "quantity of narcotic drugs," exceed the scope of the affidavit which recited that Miss Brown "personally went to Room 250 on a routine inspection of the premises and observed on the floor of that room a considerable quantity of seeds scattered about? . . . [T]he seeds she observed upon the floor of Room 250 were, from her experience, marijuana seeds as she knows them." Benson argues that there was no probable cause to authorize the search for "a quantity of narcotic drugs"; that the scope of the search under the warrant was limited to the "seeds" mentioned in the affidavit. This is not true.

Where the affidavit contains information which justified the magistrate in believing that upon a search of the particular premises not only marijuana but other narcotics might be found, the warrant describing "a quantity of narcotic drugs" was in order. Here, the affidavit desclosed not only that the informant had observed marijuana seeds, but that she had overheard Benson "discussing the sale of acid (D-lysergic acid)." Both marijuana and D-lysergic acid are *narcotics* by definition under the laws of Colorado. C.R.S. 1963, 48-5-1.

■ We held in *People v. Schmidt*, 172 Colo. 285, 473 P.2d 698, that:

". . . If the purpose [of search] is to seize, not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unne-

cessary and it may be described generally as to its nature or character."

*See also People v. Henry,* 173 Colo. 523, 482 P.2d 357.

## II.

The final contention of the defendant is that his fourth amendment rights were violated by Miss Brown's "search" of his room, and that any evidence ultimately obtained as the result of what she learned through her illegal entry tainted the affidavit, the warrant, the search and the evidence seized. This is so, urges the defendant, because of his request that he not be given maid service.

Miss Brown, in her affidavit, states that she made a "routine inspection of the premises" and found the purported marijuana seeds. The defendant equates the "routine inspection" with a "warrantless search." Having said this, he proceeds to develop his theory of illegality on the basic premise that the fourth amendment proscribes the conduct of private citizens in the same manner as it does that of public officials.

Defendant places his principal reliance upon *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, which holds that a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. We agree with *Stoner,* but hold that it is not applicable under the circumstances of this case. In *Stoner* the officers went to the hotel without a search warrant and induced the clerk to permit them to search Stoner's room. The United States Supreme Court held that the evidence obtained in such a search should be suppressed, stating:

"It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent. It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis what-

soever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room."

The factual situation here distinguishes this case from *Stoner*. Here, the police did not suggest or instigate the inspection by Miss Brown, nor did they accompany her when she entered the room. Her action was her own idea and she was not acting as an agent or the alter ego of the police.

A complete answer to the defendant's argument is found in this statement by the United States Supreme Court in *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048:

"The 4th Amendment gives protection against unlawful searches and seizures, and, as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the 4th Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.

. . . .

"The papers having come into the possession of the government without a violation of petitioner's rights by governmental authority, we see no reason why the fact that individuals, unconnected with the government, may have wrongfully taken them, should prevent them from being held for use in prosecuting an offense where the documents are of an incriminatory character."

For a review of the judicial history of this rule since *Burdeau*, see *Geniviva v. Bingler*, 206 F.Supp. 81 (1961), in which the court concluded its opinion with this statement:

"The rule as to the exclusion, in both federal and state courts, of evidence obtained by an unreasonable search

and seizure in violation of the Fourth or the Fourteenth Amendment has been broadened and expanded since *Burdeau v. McDowell, supra.* The rule, however, has not been expanded to the extent that evidence obtained by persons not acting in concert with either state or federal officials must be excluded. In this case, no constitutional rights of plaintiffs were invaded by or under color of official authority and in view of the principles set forth in *Burdeau v. McDowell, supra,* plaintiffs' motion to suppress will be denied."

Although Miss Brown's entry into Benson's room may have been contrary to his express orders, the use in the affidavit of the information so obtained did not invalidate the warrant.

The ruling is affirmed.

MR. JUSTICE LEE not participating.