**PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Rodney BREWER and Debbie Brewer, Defendants-Appellees.**

**No. 84SA249.**

Supreme Court of Colorado, En Banc.

Nov. 26, 1984.

Eugene L. Farish, Dist. Atty., Del Norte, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Jeff Boyd Herron, Deputy State Public Defender, Alamosa, for defendants-appellees.

LOHR, Justice.

In this interlocutory appeal from an order of the District Court for Rio Grande

County, the People challenge the suppression of a quantity of marijuana and certain drug-related paraphernalia uncovered in a search of a house rented to the defendants. We affirm the order of the district court.

Selia Stieha leased a house on Batterson Street in Monte Vista, Colorado, to the defendants, Rodney and Debbie Brewer. The lease provided for a month-to-month tenancy, with rental payments to be due on the fifteenth of each month. On November 24, 1983, Stieha arrived in Monte Vista with some goods that she wished to store in an unrented portion of the Batterson Street house. She attempted to call the Brewers, but found that their telephone had been disconnected. From conversations with the defendants' relatives, Stieha learned that the Brewers were living in another house, and had put antifreeze in the plumbing of the Batterson Street house. They had not paid rent to Stieha for the month of November.

Concerned about the condition of the house, Stieha and her husband went to the premises and used Stieha's key to gain admission. The house was in disarray. One of the defendants, Debbie Brewer, arrived soon afterwards, apologized for the mess, and promised that the defendants would move out over the coming weekend. Stieha arranged to meet with the tenants the following morning so that she could place her goods in a back room for storage.

When the Brewers failed to arrive at the appointed time the next day, Stieha again unlocked the door and entered the house. Disgusted with the condition of the premises, Stieha kicked a shoe box in a gesture of frustration and uncovered a bag of marijuana. She then contacted police officers and admitted them into the house, where they seized the marijuana that Stieha had discovered. Stieha allowed the officers to search the premises. Soon after the search

began, Debbie Brewer arrived at the house. The trial court found that, when asked by the officers for her permission to search, Brewer responded that it looked as though they had already done what they were going to do, or words to that effect.

The defendants were charged with possession of more than eight ounces of marijuana.[1] At a suppression hearing, the trial court ruled that the warrantless search of the property violated the defendants' rights under the Fourth Amendment to the United States Constitution and Article II, section 7, of the Colorado Constitution.[2] It therefore suppressed everything seized during the search of the house. We hold that the trial court's ruling was correct.

▪ The uncontested evidence shows that Stieha's discovery of the marijuana was unrelated to any governmental action. Her activities on the leased premises were solely in pursuit of her private interests as owner and landlord. Her lease with the defendants gave her the right, as landlord, to enter and inspect the house. Fourth Amendment protection against unreasonable searches and seizures applies only to governmental action, and not to independent searches by private citizens. *United States v. Jacobsen,* —— U.S. ——, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed.2d 1048 (1921); *People v. Benson,* 176 Colo. 421, 490 P.2d 1287 (1971). Therefore, the defendants cannot challenge Stieha's actions on a constitutional basis up to the point when she invited the police officers onto the premises to show them what she had found.

▪ Stieha's invitation to the police officers to enter the house, and her ensuing consent to their request to search the premises supply no basis to support the warrantless entry and subsequent search. It is well settled that a landlord cannot

---

1. The defendants were charged under section 18-18-106(4)(b), 8 C.R.S. (1984 Supp.): possession of more than eight ounces of marijuana.

2. Neither party suggests that the standards of the Colorado Constitution differ from those of the United States Constitution as those standards relate to the facts before us. For the purpose of our analysis, we accept the premise that the protections provided by the state and federal constitutions in the present case are the same.

consent to a search of her tenants' premises by governmental authorities. *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *People v. Boorem*, 184 Colo. 233, 519 P.2d 939 (1974); *Condon v. People*, 176 Colo. 212, 489 P.2d 1297 (1971).

■ Had the police officers obtained a search warrant based on the probable cause provided by Stieha's report of what she had found, there would have been no violation of the defendants' Fourth Amendment rights. *People v. Benson*, 176 Colo. 421, 490 P.2d 1287 (1971); *see Coolidge v. New Hampshire*, 403 U.S. 443, 487–490, 91 S.Ct. 2022, 2048–2050, 29 L.Ed.2d 564. In *People v. Benson*, this court found no violation of a defendant's Fourth Amendment rights under similar, but distinguishable, circumstances. In that case, a motel manager, during a routine inspection, discovered marijuana in the defendant's motel room. The manager reported her findings to police officers, who then obtained a warrant and searched the room. The problem in the case now before us is that no warrant was obtained by the officers before they entered the Brewers' rented house. A search without a warrant is presumed to be invalid, and the burden is on the People to prove that the search fell within some exception to the warrant requirement. *People v. Turner*, 660 P.2d 1284 (Colo.1983); *People v. Hines*, 195 Colo. 71, 575 P.2d 414 (1978); *People v. Casias*, 193 Colo. 66, 563 P.2d 926 (1977). The People have not met this burden.

The People have argued on appeal that the search in question can be justified in three possible ways. First, they argue that the defendants had abandoned the Batterson Street house and that Stieha therefore had the authority, as owner, to consent to the search. Next, the People contend that one of the defendants, Debbie Brewer, consented to the search. Finally, they argue that section 16–3–308, 8 C.R.S. (1984 Supp.), which creates a "good faith" exception to the exclusionary rule, should be applied in this case.

■ The People's first argument, that the defendants had abandoned the house, is contrary to the conclusion reached by the trial court based on uncontroverted evidence in the record. The trial court ruled that the property was not abandoned, even though the last month's rent had not been paid and the defendants were living elsewhere. The Brewers had left their personal belongings in the locked house, and the landlord recognized the tenants' right to come in and remove their possessions. Had the defendants abandoned the house, they would not have had any property interest in it. This, in turn, would indicate that they had not retained any legitimate expectation of privacy in the premises. For purposes of determining the constitutionality of a search, this is the relevant inquiry. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Sporleder*, 666 P.2d 135 (Colo. 1983). A defendant can challenge the validity of a search only when he has a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Spies*, 200 Colo. 433, 615 P.2d 710 (1980). Clearly, the defendants displayed an interest in the belongings they left in the house when they offered to move them out over the weekend. In addition, the fact that Stieha arranged to move her goods into the house only at a time when the defendants would be present shows her recognition of the tenants' continuing control over the premises and of their right to privacy. Thus, the record, including the findings of the trial court, establishes that the defendants had a continuing, legitimate expectation of privacy in the Batterson Street house at the time the police officers entered and searched the premises.[3]

---

**3.** Neither party has suggested that the United States Supreme Court's recent ruling in *United States v. Jacobsen*, —— U.S. ——, 104 S.Ct. 1652,

80 L.Ed.2d 85 (1984), supports the constitutionality of the search in the present case. In *Jacobsen*, a box had been damaged and torn by a

The People's contention that Debbie Brewer consented to the search is also without merit. Had the defendants voluntarily consented, there would be no Fourth Amendment violation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). At the suppression hearing, both Debbie Brewer and Stieha testified that Brewer's response to the police officers' request for permission to search was: "It looks like you've already done what you wanted," or words to that effect. Only the investigating police officer thought that the defendant had answered "O.K.," or words of similar import. The trial court ruled that there had been no voluntary consent. Voluntary consent is an issue of fact to be determined by the trial court considering the totality of the circumstances. *People v. Bowman*, 669 P.2d 1369 (Colo.1983); *People v. Elkhatib*, 632 P.2d 275 (Colo.1981). Since the determination of the trial court is supported by adequate evidence in the record, it will not be disturbed on review. *People v. Johnson*, 653 P.2d 737 (Colo.1982).

Lastly, section 16–3–308, 8 C.R.S. (1984 Supp.) is inapplicable in this case. This statutory provision permits admission of evidence that would otherwise be suppressed where a peace officer seized the evidence as a result of a good faith mistake or technical violation. The People contend that the officers who searched the Brewers' residence made a good faith mistake in believing that Stieha had authority to consent to a search. As noted earlier, it is well settled that a landlord cannot consent to a search of a tenant's premises. *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *People v. Boorem*, 184 Colo. 233, 519 P.2d 939 (1974); *Condon v. People*, 176 Colo. 212, 489 P.2d 1297 (1971). And, as the trial court found, the record establishes that the officers believed the Brewers were tenants of Stieha. The good faith exception does not apply where, as here, the officers have made a mistake of law, and not of fact. *People v. Quintero*, 657 P.2d 948 (Colo. 1983).

Having been told by Stieha that she had found marijuana in the Brewers' house, the officers should have obtained a search warrant before entering the premises to seize the marijuana or commence a search. Without such a warrant, the entry and ensuing search were invalid, and the evidence must be suppressed.

The order of the district court is affirmed.

ERICKSON, C.J., dissents.

ROVIRA, J., concurs in part and dissents in part.

ERICKSON, Chief Justice, dissenting:

I respectfully dissent.

The contraband in this case was originally discovered by Selia Stieha, a private citizen. Stieha, as a landlord, entered premises which she had leased to Rodney and Debbie Brewer to make an inspection. She had not been paid rent for the month of November and had been told that the Brewers were moving and were living in another house. The phone to the leased premises had been disconnected and antifreeze had been put in the plumbing. Upon entering the premises Stieha discov-

forklift while in the possession of an airport Federal Express office. Employees of that private organization opened the box and tube inside it, and observed a white powder enclosed within several plastic bags. They replaced the items in the tube, put the tube back in the box and notified the Drug Enforcement Administration. Federal agents observed the open box and removed the plastic bags from the opened tube inside it, again bringing the white powder into view. The United States Supreme Court held that, under these circumstances, the agents' actions following the private search infringed no legitimate expectation of privacy entertained by the owners of the package. *But cf. Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (law enforcement officers' viewing of obscene film discovered by private search constitutionally unreasonable because it was a significant expansion of the private search). The decision in *Jacobsen* was based in part on the minimal intrusion involved in the governmental search of an unwrapped package, and has never been used to justify an invasion of privacy as substantial as entry into a house.

ered that the heat had been turned off and found the premises to be in a state of total disarray. Debbie Brewer later confirmed that she and her husband had no intention of renewing the lease for another month or to re-occupy the premises. Although Brewer informed Stieha that she would remove the remaining furniture and articles of clothing from the house over the weekend, she failed to meet Stieha the following morning at an appointed time, so Stieha again entered the premises and inadvertently discovered marijuana. Stieha later called the police and directed them to the marijuana that she had discovered.

The majority acknowledges that the constitutional protection against unreasonable searches and seizures applies only to governmental action and not to independent searches by private citizens. *United States v. Jacobsen,* — U.S. ——, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); *People v. Benson,* 176 Colo. 421, 490 P.2d 1287 (1971). In *Jacobsen,* the United States Supreme Court stated that, in reviewing the discovery of contraband by private citizens, any additional invasion of a defendant's privacy by the police must be tested by the degree to which the police went beyond the scope of the private search. 104 S.Ct. at 1657, 80 L.Ed.2d at 95. The federal proscription against unreasonable searches and seizures is implicated only if the police obtain evidence or information with respect to which the expectation of privacy has not already been frustrated. *Id.,* 104 S.Ct. at 1658, 80 L.Ed.2d at 97.

In my view, the recovery by the police of the marijuana originally discovered by Stieha was not an expansion of her private "search," nor was it an additional search subject to the warrant requirement. The majority concedes that Stieha's activities were solely in pursuit of her private interests as owner and landlord of the leased premises, and were by no means conducted on behalf of, or in furtherance of, a police investigation. Maj. op. at 862. Whether or not her presence on the premises was reasonable, the defendants' original expec-

tation of privacy with respect to the marijuana was frustrated by Stieha's private discovery. I do not perceive how the recovery of the contraband by the police after it was discovered by Stieha, a private citizen, constituted a further violation of the defendants' legitimate expectations of privacy.

At best, the defendants in this case had only a diminished expectation of privacy with respect to the leased premises. By their affirmative actions, the defendants had rendered the premises virtually uninhabitable and were in fact residing at another location. The term of the leasehold had expired and the defendants unequivocally manifested their intent not to renew the month-to-month tenancy. *Cf. State v. Taggart,* 7 Or.App. 479, 491 P.2d 1187 (1971) (tenant whose landlord has acquiesced in late payment of rent and does not know or have reason to know that landlord has decided to terminate the tenancy continues to have reasonable expectation of privacy with respect to the leased premises).

Although the Brewers may not have abandoned the premises, in my view, the fact that Stieha permitted them to keep some remaining possessions on the property until the coming weekend, after the lease had expired and with no expectation of receiving further rent, did not confer upon the Brewers a continuing possessory right in the premises or preclude Stieha from furthering her interests, as owner and landlord, in safeguarding the condition of her property. Although the police were aware that the Brewers had been renting the premises from Stieha, judging from the condition of the premises and Stieha's apparent present control, the officers could reasonably infer that she had authority to consent to a search. The defendants were also aware of a prior entry into the premises by Stieha and knew of, and acquiesced in, her intent to re-enter the premises.

I would conclude that section 16–3–308, 8 C.R.S. (1984 Supp.), is applicable. This is not a *Quintero* case where the police lacked probable cause to arrest until five hours after an arrest was made. *People v.*

*Quintero,* 657 P.2d 948 (Colo.1983), *cert. granted,* — U.S. —, 103 S.Ct. 3535, 77 L.Ed.2d 1386, *cert. dismissed,* — U.S. —, 104 S.Ct. 543, 78 L.Ed.2d 719 (1983). In this case, probable cause existed prior to the arrest of the defendants inasmuch as the arrests occurred after the police had recovered illegal drugs discovered by Stieha, acting as a private citizen. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In dealing with Stieha, there is nothing in the record to indicate that the police knew of a continuing tenancy between Stieha and the Brewers or knew that Stieha had given the Brewers the weekend to remove their remaining possessions. Any error by the police regarding the existence of a tenancy was, in my view, a mistake of fact and not of law. *United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* — U.S. —, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

In my view, the recovery of the marijuana by the police and the subsequent search, under the facts in this case, infringed no legitimate expectations of privacy, and the order of suppression should therefore be reversed.

ROVIRA, Justice, concurring in part and dissenting in part:

I dissent from the majority's holding that the seizure of the marijuana was a violation of the defendant's rights under the fourth amendment and Article II, section 7, of the Colorado Constitution, and concur in the remainder of the opinion.

The court's opinion holding that the seizure of the marijuana was illegal rests on an illusory difference between a citizen who takes contraband to the police and a citizen who calls the police and requests them to come into a house, that the citizen has a right to be in, to pick up contraband. It is conceded by the court that if Stieha had taken the marijuana to the police, or if she had called the police, requested them to come to the residence, walked outside the house with the marijuana, and handed it to a policeman, no constitutional violation would have occurred. *See United States v. Jacobsen,* — U.S. —, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *People v. Benson,* 176 Colo. 421, 490 P.2d 1287 (1971).

However, according to the majority opinion, a violation of the defendant's constitutional rights did occur when Stieha "invited the police officers onto the premises" even though she had the right as landlord to enter and inspect the house. Maj. op. at 862. There is no sound reason to distinguish between the police entering the house to pick up the marijuana at Stieha's request, and accepting the marijuana from her at the police station or on the front porch. Stieha intended to turn the marijuana over to law enforcement authorities. The method she chose should not determine whether a constitutional violation occurred. Therefore, I conclude that there was no illegal search or seizure, and I would reverse the trial court's order suppressing the marijuana.

Since the marijuana was the only contraband Stieha discovered, this is the only evidence she would have turned over to the police had she chosen to take the evidence to them. Thus, the officer's seizure of items other than the marijuana was illegal. Therefore, I agree with the majority's affirmance of the trial court's order suppressing the drug-related paraphernalia.