Wayne RUTT and Paul Marrick, Petitioners–Appellants and Cross–Appellees,

v.

POUDRE EDUCATION ASSOCIATION and Colorado Education Association, Respondents–Appellees and Cross–Appellants,

and

Division of Administrative Hearings, Appellee.

No. 05CA1718.

Colorado Court of Appeals, Div. A.

July 20, 2006.

Hackstaff Gessler, LLC, Scott E. Gessler, Denver, Colorado, for Petitioners–Appellants and Cross–Appellees.

Issacson Rosenbaum, P.C., Mark G. Grueskin, Blain D. Myhre, Daniel C. Stiles, Denver, Colorado, for Respondents–Appellees and Cross–Appellants.

Opinion by Judge ROTHENBERG.

This administrative appeal addresses whether respondents, Colorado Education Association (the CEA) and Poudre Education Association (the PEA), violated the Campaign and Political Finance Amendment, Colo. Const. art. XXVIII (the Amendment), and § 1–45–117, C.R.S.2005, of the Fair Practices Act in conducting certain campaign activity in the 2004 election. Because we conclude the CEA and the PEA violated the Amendment, we reverse the order of the administrative law judge (ALJ) and remand the case for further proceedings.

## I. Background

In 2005, as relevant here, complainants, Wayne Rutt and Paul Marrick (collectively Rutt), filed an amended complaint with the Secretary of State alleging that two labor organizations—the CEA and the PEA, an affiliate of the CEA—illegally contributed to the campaign of Bob Bacon, a candidate for office in state senate district 14.

According to the complaint, in violation of § 1–45–117 the CEA and the PEA organized and directed two walks by their members during which they distributed Bacon campaign literature that expressly advocated Bacon's election. The complaint also alleged that the CEA and the PEA violated the Amendment by compensating employees to coordinate worker activities and recruitment for the Bacon campaign, by exchanging and coordinating voter targeting information with the Bacon campaign, and by organizing, di-

recting, and paying for a letter-writing campaign to the public urging voters to vote for Bob Bacon.

The CEA and the PEA moved to dismiss the statutory claim and requested attorney fees for defending against it. They asserted that they are labor organizations, not state or political subdivisions; that § 1–45–117 requires a showing of governmental action; and, therefore, that Rutt had no cognizable claim against them under the statute.

The ALJ ordered Rutt to file a second amended complaint setting forth specific factual allegations supporting the claims, and she set a hearing. At the hearing, Rutt dismissed one cause of action, and testimony was presented regarding the other claims.

The ALJ issued a final agency decision dismissing Rutt's claim under § 1–45–117 and resolving all issues in favor of the CEA and the PEA, except that the ALJ denied the CEA's and the PEA's request for attorney fees.

Rutt appeals the order of dismissal, and the CEA and the PEA cross-appeal an evidentiary ruling and that portion of the ALJ's order denying their request for attorney fees.

## II. Standard of Review

On review, an agency decision will be reversed if it is arbitrary or capricious, unsupported by the evidence, or contrary to law. *Coffman v. Colo. Common Cause,* 102 P.3d 999 (Colo.2004); *Nededog v. Colo. Dep't of Health Care Policy & Fin.,* 98 P.3d 960, 961 (Colo.App.2004).

We examine the record in the light most favorable to the agency decision. Whether the record contains substantial evidence to support the agency decision is a question of law subject to de novo review. *Martelon v. Colo. Dep't of Health Care Policy & Fin.,* 124 P.3d 914 (Colo.App.2005); *Colo. State Bd. of Med. Exam'rs v. Davis,* 893 P.2d 1365 (Colo.App.1995).

We also review de novo the interpretation of a constitutional amendment. *Colo. Dep't. of Labor & Employment v. Esser,* 30 P.3d 189 (Colo.2001). Although we consider the agency's interpretation in construing the statute, its construction is advisory, not binding. *Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue,* 40 P.3d 1260 (Colo.2002).

In construing a constitutional provision, we are obligated to give effect to the intent of the electorate that adopted it. In giving effect to that intent, we look to the words used, reading them in context and according them their plain and ordinary meaning. Where ambiguities exist, we interpret the constitutional provision as a whole in an attempt to harmonize all its parts. *Bruce v. City of Colorado Springs,* 129 P.3d 988 (Colo.2006); *Harwood v. Senate Majority Fund, LLC,* 141 P.3d 962 (Colo.App. 2006). We also consider the object to be accomplished and the mischief sought to be prevented by the provision. *City of Aurora v. Acosta,* 892 P.2d 264 (Colo.1995). And we avoid any interpretation that creates an unreasonable or absurd result. *Bickel v. City of Boulder,* 885 P.2d 215 (Colo.1994).

## III. Purpose of the Amendment

The Amendment was passed in an effort to eliminate the disproportionate influence of special interest groups over the Colorado political process. Section 3(4)(a) of the Amendment provides, as relevant here, that "[i]t shall be unlawful for a ... labor organization to make contributions to a candidate committee ... and to make expenditures expressly advocating the election ... of a candidate."

According to § 1 of the Amendment, Colorado citizens adopted the Amendment in part because (1) "large campaign contributions to political candidates create the potential for corruption and the appearance of corruption"; (2) "large campaign contributions made to influence election outcomes allow wealthy individuals, corporations, and special interest groups to exercise a disproportionate level of influence over the political process"; (3) "in recent years the advent of significant spending on electioneering communications ... has frustrated the purpose of existing campaign finance requirements"; and (4) "political contributions from corporate treasuries ... can unfairly influence the outcome of Colorado elections."

## IV. Political Contributions

Rutt contends the ALJ erred in concluding the CEA and the PEA did not contribute to the Bacon campaign. We agree.

As relevant here, the Amendment defines a "contribution" to a political campaign to include:

(I) The payment, loan, pledge, gift, or advance of money, or guarantee of a loan, made to any candidate committee ...;

(II) Any payment made to a third party for the benefit of any candidate committee ...;

(III) The fair market value of any gift or loan of property made to any candidate committee ...;

(IV) Anything of value given, directly or indirectly, to a candidate for the purpose of promoting the candidate's nomination, retention, recall, or election.

Colo. Const. art. XXVIII, § 2(5)(a).

Certain payments and services are specifically excluded from the definition of contributions. Section 2(5)(b) of the Amendment provides that contributions to political campaigns do *not* include

services provided without compensation by individuals volunteering their time on behalf of a candidate [or] candidate committee ...; a transfer by a membership organization of a portion of a member's dues to a small donor committee or political committee sponsored by such membership organization; or payments by a ... labor organization for the costs of establishing, administering, and soliciting funds from its own employees or members for a political committee or small donor committee.

"Contributions" also include expenditures that are coordinated with a candidate. Colo. Const. art. XXVIII, §§ 2(9), 5(3). An expenditure is "any purchase, payment, distribution, loan, advance, deposit, or gift of money by any person for the purpose of expressly advocating the election or defeat of a candidate." Colo. Const. art. XXVIII, § 2(8)(a). But "expenditures" do *not* include spending by a membership organization for any communication solely to members and their families. Colo. Const. art. XXVIII, § 2(8)(b)(III).

Rutt relies on the two definitions of "contribution" that make it illegal (1) to make "[a]ny payment ... to a third party for the benefit of any candidate committee," Colo. Const. art. XXVIII, § 2(5)(a)(II), and (2) to give "[a]nything of value ... directly or indirectly, to a candidate for the purpose of promoting the candidate's ... election," Colo. Const. art. XXVIII, § 2(5)(a)(IV). Rutt maintains that the CEA's and the PEA's efforts to elect Bacon were coordinated with the Bacon campaign within the meaning of §§ 2(9) and 5(3) of the Amendment, and thus their efforts constitute a contribution under either or both of these provisions and therefore violate § 3(4)(a) of the Amendment. We agree as to most of the CEA's and the PEA's activities.

### A. Coordination

To address this contention, we must first consider Rutt's argument that the ALJ applied an incorrect and unduly restrictive legal standard in determining that the CEA and the PEA did not coordinate their efforts with the Bacon campaign. We agree.

Neither of the two sections defining contribution on which Rutt relies includes the term "coordination." However, Rutt's attorney conceded at oral argument, and we agree, that a finding of coordination is required to avoid a conflict with the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (holding that certain provisions of the Federal Election Campaign Act of 1971, which limited independent political expenditures by individuals and groups and fixed ceilings on overall campaign expenditures by candidates, were unconstitutional because they impermissibly burdened the right of free expression under the First Amendment); *Fed. Election Comm'n v. Christian Coalition*, 52 F.Supp.2d 45 (D.D.C. 1999) (discussing coordination at length); *see also Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 617–18, 116 S.Ct. 2309, 2317, 135 L.Ed.2d 795 (1996) (reiterating the Court's holding in *Buckley* that the Constitution "grants to individuals, candidates, and ordinary political committees the right to make unlimited independent expenditures," and ob-

serving that a "constitutionally significant fact ... is the lack of coordination between the candidate and the source of the expenditure").

■ No reported appellate decision in Colorado has defined the term "coordination" in the context of political campaign contributions. Rutt's position is that we should adopt the definition of coordination used by the Federal Election Commission. *See* 11 C.F.R. §§ 109.20, 109.21 (2006). Rutt argues:

[I]n enacting [the Amendment], Colorado voters specifically intended to rely on federal law as a guide to the ban on labor organization contributions. As the initiative proponents stated, "Corporations and labor unions are already banned from directly contributing to federal candidates; this proposal [the Amendment] simply extends the ban to state races." [And] [f]ederal law ... uses a radically different and far more practical definition than the one set forth by the [ALJ].

We are not persuaded. While we agree the Amendment was enacted, in part, to extend the federal ban on campaign contributions by labor unions to state campaigns, *see* Colorado Legislative Council, Research Pub. No. 502–1, 2002 Ballot Information Booklet 6 (2002), the text of the Amendment does not incorporate by reference federal law regarding campaign contributions.

We may look to federal law and regulations defining coordination in the context of political campaign contributions for guidance. *See Forbes v. Goldenhersh,* 899 P.2d 246, 249 (Colo.App.1994) (when there is no Colorado case law directly on point and the pertinent portions of the Colorado and federal statutes are essentially the same, federal authority is persuasive in analysis of the Colorado statute). But we first look at the terms of the Amendment itself and apply the constitutional provision according to its clear terms, giving effect to every word if possible. *See City of Aurora v. Acosta, supra; Harwood v. Senate Majority Fund. LLC, supra.*

We begin by examining the plain and ordinary meaning of the term "coordination." *See Bruce v. City of Colorado Springs, supra.* Dictionaries define "coordination" as "the act of coordinating." *E.g., Merriam–*

*Webster's Collegiate Dictionary* 275 (11th ed.2004). "Coordinating" is defined as "to harmonize in a common action or effort" and "to work together harmoniously." *American Heritage Dictionary of the English Language* 404 (4th ed.2000). These definitions contemplate something more than one person or entity having contact with another. They suggest that some level of concerted action between two parties is necessary.

These definitions are not inconsistent with those found in the Federal Election Commission's current regulations. Under the regulations, "coordinated" means "made in cooperation, consultation or concert with, or at the request or suggestion of, a candidate, a candidate's authorized committee, or a political party committee." 11 C.F.R. § 109.20 (2006). Communications include all general public political advertisements, but exclude internet communications. 11 C.F.R. § 100.26 (2006).

Under the federal regulations, whether a communication is coordinated with a political candidate depends on the content of the communication and the conduct of the political campaign. *See* 11 C.F.R. § 109.21 (2006). These "content" and "conduct" standards are satisfied if the communication is a distribution of campaign materials created by the candidate, 11 C.F.R. § 109.21(c)(2) (2006), and the candidate was materially involved in the decision making regarding the content of the communication. 11 C.F.R. § 109.21(d) (2006).

## B. Harmonious and Common Effort

The president of the PEA and the executive director of the CEA both testified at the hearing and admitted that their organizations engaged in activities to promote Bob Bacon's candidacy. But they denied coordinating those activities with the Bacon campaign. The ALJ accepted their argument that there was no coordination between the CEA, the PEA, and the Bacon campaign, finding that (1) the Bacon campaign was not involved in "approving, planning, or organizing the walk[s]"; (2) the CEA's and the PEA's plan for distribution of campaign materials differed from the plan used by the Bacon cam-

paign; (3) the CEA's and PEA's voter targeting "did not match up with the targeting done by the Bacon campaign"; and (4) the CEA's and PEA's efforts did not relieve Bacon of "the need to conduct his own campaign activities or enable him to modify his campaign plan in any way."

However, contrary to the ALJ's determination, coordination does not require a formal collaboration between the parties, *cf.* 11 C.F.R. § 109.21(e) (2006), or express approval of the CEA's and the PEA's activities by the Bacon campaign. Used in this context, coordination simply requires the parties "to harmonize in a common action or effort" and to "work together harmoniously."

■ After applying what we view as the correct legal standard, we conclude such a harmonious and common effort occurred in this case. In reaching this conclusion, we rely on three particular actions that were taken by the CEA, the PEA, and the Bacon campaign, which, viewed together, persuade us there was coordination within the meaning of the Amendment.

First, it is undisputed that the CEA and the PEA received from the Bacon campaign thousands of Bacon flyers and numerous yard signs for distribution. These campaign materials were produced and paid for by the Bacon campaign and were made available to the CEA and the PEA for distribution by their volunteers.

Second, it is undisputed that before the two organized walks in which the CEA and the PEA volunteers distributed the Bacon campaign materials, Bob Bacon made a personal appearance at the volunteer site and thanked the volunteers for their services.

Third, there was evidence that the CEA's executive director had several conversations with Bacon's campaign manager. While the CEA's executive director denied knowledge of Bacon's campaign strategy, he admitted he described to Bacon's agents the nature of the CEA's and the PEA's volunteer effort and its scope.

None of these activities, standing alone, may have been sufficient to constitute coordination. *See Fed. Election Comm'n v. Christian Coalition, supra,* 52 F.Supp.2d at 94

(while the court described President George H.W. Bush's appearance at a Christian Coalition political gathering as "troubling," it concluded that fact alone did not constitute coordination between the Coalition and Bush's campaign committee).

However, we conclude that these three activities, viewed together, constitute coordinated actions by the CEA, the PEA, and the Bacon campaign to distribute Bacon campaign literature and signs, and that the ALJ erred in concluding otherwise.

There was also evidence that the PEA sent postcards to its area representatives with instructions to distribute them to PEA members. The postcards were preprinted with the message, "I'm voting for Bob Bacon," and members were asked to address and mail the postcards to voters. The PEA paid for the communication to its members and for the postcards. But there was no evidence the Bacon campaign initiated, requested, or suggested the postcards, or determined their content. Nor was there evidence that the PEA members actually mailed any of the postcards to voters.

Accordingly, we discern no error by the ALJ in determining that the mailing of the postcards did not violate the constitutional prohibition against making contributions to a political campaign.

### C. Value

The CEA and the PEA nevertheless contend their efforts did not result in any quantifiable value to the Bacon campaign, which is required by § 2(5)(a)(IV) of the Amendment (defining contribution as "[a]nything of value given, directly or indirectly, to a candidate for the purpose of promoting the candidate's ... election"). We disagree.

■ The term "anything of value" is unambiguous and broad enough to include the organized effort to distribute the campaign flyers and yard signs expressly advocating Bacon's election for state senate. The practical effect of the CEA's and the PEA's efforts is the same as if they had contributed a dollar amount to the Bacon campaign that

the campaign had then used to pay for the distribution of its literature.

### D. Exemption for Volunteers

 We further conclude the ALJ erred in determining that the CEA's and the PEA's efforts were exempt from the definition of contribution because they were "services provided without compensation by individuals volunteering their time on behalf of a candidate," within the meaning of § 2(5)(b) of the Amendment.

The ALJ accepted the CEA's and the PEA's argument that their actions were simply individual volunteer efforts by their members. However, the undisputed evidence showed that the CEA and the PEA organized a collective, volunteer effort by (1) contacting their members; (2) initiating and organizing the two walks; (3) obtaining the Bacon campaign literature; (4) distributing it to members; (5) recommending locations at which members were to distribute the literature; and (6) informing Bacon of the dates of the two walks.

We conclude these activities, viewed as a whole, go beyond individual volunteer efforts and constitute exactly the kind of conduct that Colorado voters intended to prohibit when they passed the Amendment. Therefore, these activities by the CEA and the PEA are not exempt from the definition of contribution in § 2(5)(b) of the Amendment.

### E. Conclusion

In summary, we conclude the coordinated activities by the CEA and the PEA described above constituted an illegal contribution to the Bacon campaign under § 2(5)(a)(IV) and violated § 3(4)(a) of the Amendment.

Given our conclusion, we need not address whether the CEA's and the PEA's coordinated efforts also constituted an illegal contribution under § 2(5)(a)(II), or Rutt's other arguments.

### V. Cross–Appeal

We reject the CEA's and the PEA's argument on cross-appeal as to the admission of certain evidence, but we agree that their request for attorney fees must be reconsidered.

### A. Evidentiary Ruling

The CEA and the PEA contend the ALJ abused her discretion by denying their request to exclude evidence obtained by Rutt in an allegedly illegal manner, namely, by trespassing and rifling through the CEA's trash. The CEA and the PEA maintain that the ALJ applied an incorrect legal standard in reaching her ruling because she relied on *Ahart v. Colorado Department of Corrections*, 964 P.2d 517 (Colo.1998), which involved state action. Because Rutt is not a state actor, the CEA and the PEA contend the Fourth Amendment has no application to Rutt's conduct and the ALJ's reliance on *Ahart* was misplaced. We conclude reversal is not warranted.

 The Fourth Amendment right to be free from unreasonable searches and seizures applies only to those searches or seizures conducted by state officials. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *People v. Brewer*, 690 P.2d 860, 862 (Colo.1984); *see United States v. Harvey*, 540 F.2d 1345, 1353 n. 10 (8th Cir.1976) (statutorily authorized monitoring of telephone line by telephone company did not constitute state action).

In *Ahart, supra*, an employee of the Department of Corrections (DOC) was suspected of using illegal drugs and ordered to take a drug test. He tested positive for marijuana, and his employment was terminated. He challenged his termination at an administrative hearing, contending that there was no reasonable suspicion to justify the drug test, and therefore, that the results of the test should be excluded. The ALJ found that the DOC lacked reasonable suspicion to order Ahart to submit to the test, but ruled that "there was no basis for applying the exclusionary rule to exclude the results of the drug tests because the benefits of applying the rule did not outweigh the costs." *Ahart v. Colo. Dep't of Corr., supra*, 964 P.2d at 519. The state personnel board reversed the ALJ, concluding that the Fourth Amendment exclusionary rule applied to employment termination proceedings.

The Colorado Supreme Court reversed the state board, explaining that "whether the exclusionary rule applies in a particular civil case requires weighing the deterrent benefits of applying the rule against the societal cost of excluding relevant evidence." *Ahart v. Colo. Dep't of Corr., supra,* 964 P.2d at 520 (citing *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)). The court concluded that the state board erred "by holding that the exclusionary rule applied without considering the societal costs of applying the rule, such as the safety-sensitive nature of Ahart['s] ... employment." *Ahart v. Colo. Dep't of Corr., supra,* 964 P.2d at 523.

The CEA and the PEA correctly observe that *Ahart* and the cases on which it relies all involve state action and this case does not. Thus, we agree *Ahart* is distinguishable and a Fourth Amendment analysis is inappropriate. *See United States v. Janis, supra,* 428 U.S. at 455 n. 31, 96 S.Ct. at 3033 ("It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party ... commits the offending act."). Nevertheless, we perceive no basis for reversal.

■ Evidentiary rulings are reviewed for abuse of discretion. *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r,* 105 P.3d 595 (Colo.2005). An ALJ abuses his or her discretion in granting or denying a motion to exclude evidence only if the ALJ's decision is manifestly arbitrary, unreasonable, or unfair. *See Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.,* 117 P.3d 60 (Colo.App.2004).

■ Further, administrative hearings need not comply with the strict rules of evidence. The standard to be applied is whether the evidence possesses probative value commonly accepted by reasonable and prudent persons in conduct of their affairs. *McPeck v. Colo. Dep't of Soc. Servs.,* 919 P.2d 942 (Colo.App.1996).

The CEA and the PEA asserted that Rutt's evidence was unlawfully obtained as a result of his trespass. The actual manner in which Rutt obtained the discarded documents was disputed, but the ALJ concluded she did not need to resolve the factual dispute to rule on the motion. Although the ALJ applied the standard for excluding evidence in a civil proceeding articulated in *Ahart, supra,* she also found that the substantial societal cost of excluding the relevant evidence countered any deterrent effect.

We therefore conclude that the ALJ adequately considered the probative value of the evidence, and that her ruling denying the CEA's and the PEA's motion to exclude Rutt's evidence was not manifestly arbitrary, unreasonable, or unfair. *See Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402 (Colo.App.2004)(appellate court may affirm a ruling based on any grounds supported by the record).

## B. Attorney Fees

The CEA and the PEA next contend the ALJ abused her discretion by denying their request for attorney fees before they actually filed their motion for attorney fees. We conclude a remand is required on that issue.

■ We review a decision to award attorney fees under § 13–17–102, C.R.S.2005, or under C.R.C.P. 11 for an abuse of discretion. *Redmond v. Chains, Inc.,* 996 P.2d 759 (Colo.App.2000); *Bilawsky v. Faseehudin,* 916 P.2d 586 (Colo.App.1995). However, the failure of an ALJ to exercise discretion may in itself constitute an abuse of discretion. *Ohlander v. Larson,* 114 F.3d 1531 (10th Cir. 1997).

On June 29, 2005, the ALJ issued a decision that dismissed Rutt's claim under § 1–45–117 and ruled that each party was responsible for its own fees and costs. On July 14, 2005, the CEA and the PEA filed a motion for attorney fees, contending that Rutt's sixth claim for relief, which alleged that the CEA and the PEA violated § 1–45–117, was not rationally based on law or fact because neither the CEA nor the PEA is a state agency. Section 1–45–117(1)(a)(I), C.R.S. 2005, provides that "[n]o agency, department, board, division, bureau, commission, or council of the state or any political subdivision thereof shall make any contribution in campaigns involving the nomination, retention, or election of any person to any public office."

The ALJ denied the motion, explaining that "[the CEA's and the PEA's] request for attorneys' fees has already been considered and denied." Obviously, the ALJ assumed she had already considered the motion for attorney fees, when in fact at that time the CEA and the PEA had not yet filed their motion for such fees. Accordingly, the ALJ failed to consider the merits of the CEA's and the PEA's claim and therefore abused her discretion in denying their request for attorney fees.

On remand, the ALJ is directed to consider the merits of the CEA's and the PEA's request for attorney fees based on the dismissal of Rutt's sixth claim for relief.

The order is reversed, and the case is remanded for further proceedings in accordance with the views expressed in this opinion.

Judge HAWTHORNE and Judge ROMÁN concur.