22CA2119 Peo v Nelson 12-26-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2119
Jefferson County District Court No. 21CR1403
Honorable Tamara S. Russell, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Wayne Darrell Nelson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 26, 2024

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Richards Carrington, LLC, Douglas I. Richards, Todd E. Mair, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Wayne Darrell Nelson, appeals his judgment of conviction following jury verdicts finding him guilty of three counts of misdemeanor unlawful sexual contact. We affirm.

## I.    Background

¶ 2    Between 2018 and 2020, Nelson owned a home and rented spare bedrooms to S.L.,[1] A.R., and S.J.

¶ 3    A.R. lived with Nelson during the first half of 2020. Law enforcement contacted her as part of its investigation into allegations of unwanted sexual contact made by S.L. A.R. described two instances of sexual contact by Nelson. At trial, A.R. said the first incident occurred approximately two weeks after she moved in. She brought food home from her restaurant job and took it to Nelson in the basement. After placing the food on Nelson's desk, she turned around, and Nelson was directly in front of her. She stepped back, and he "grabbed [her] boobs." She pushed him away, ran upstairs, and locked herself in her bedroom. The next morning, Nelson acted "like nothing happened," and A.R. did not bring it up

---

[1] The jury acquitted Nelson of all counts involving S.L., so we do not discuss the facts of her allegations.

again because she "thought if it [didn't] happen again, that [she] could just let it go."

¶ 4     However, on April 18, 2020, A.R. heard a loud "thud" in the basement and went downstairs to check on Nelson. Upon finding Nelson intoxicated and on the ground, A.R. helped him to his bedroom, at which point Nelson asked for water. When A.R. returned with a cup of water, Nelson pulled off his blankets and showed her that he was naked and masturbating. When A.R. went to set the water down, Nelson grabbed her breast, and A.R. "hit his hand really hard" to make him "let go." When Nelson let go, he "grabbed onto [her] vagina area" over her clothes before A.R. kneed him to get away.

¶ 5     S.J. also described Nelson touching her without her consent. S.J. testified that on one occasion when she was cooking, Nelson came up behind her, "squeeze[d]" her "right side butt cheek," and made a lewd comment. She told him that was "not okay" and that she was "not okay with that." Nelson then walked away. S.J. testified that Nelson grabbed her again while she was outside gardening. She said Nelson came up behind her and "grabb[ed] everything[,]" including her "butt" and "breasts."

¶ 6     The prosecution charged Nelson with numerous felony and misdemeanor counts related to the three women.  A jury acquitted him of all felony charges and convicted him of three misdemeanor counts related to A.R. and S.J.  The court sentenced him to five years of concurrent probation.

## II.     CRE 608(a) Evidence

¶ 7     Nelson contends that the trial court erroneously excluded evidence of A.R.'s untruthfulness because the testimony he sought to introduce was admissible under CRE 608(a).  We disagree.

## A. Additional Facts

¶ 8     During trial, Nelson attempted to introduce evidence of A.R.'s character for untruthfulness through two Arvada police officers and Detective Kristin Ames.  The prosecution called Detective Ames to testify about her investigation of Nelson and the statements made by A.R. and S.L. during interviews.  On cross-examination, defense counsel questioned Detective Ames about prior investigations of false reports made by A.R., and the prosecution immediately objected.  In a bench conference, defense counsel noted two prior instances in which A.R. allegedly had made false reports to police.  Counsel stated that he would not "get into any of the allegations at

all" but was laying a foundation for "an opinion or reputation within the Arvada Police Department for [A.R.] essentially making things up and telling false stories."

¶ 9 The trial court initially told counsel he "could ask [Detective] Ames if she has an opinion about the reputation in the community of [A.R.'s] truthfulness or untruthfulness," but he could not go into specific instances of conduct. After the prosecution argued that the detective lacked personal knowledge of A.R.'s truthfulness and that the criminal justice system was not the "community" contemplated by CRE 608, the court changed course and found that the "criminal justice system is not a recognized or general community" for the purposes of reputation evidence and prohibited further inquiry.

¶ 10 Nelson also attempted to call two other Arvada police officers to testify regarding their opinions of A.R.'s truthfulness. One officer had prepared a report in which he noted that A.R. had a history of false reporting and that the crime she alleged had not occurred. The other officer had dealt with A.R. on two prior occasions. In one instance, he deemed the report a false one, and in the other, numerous inconsistencies led to a decision not to pursue charges.

¶ 11 Defense counsel argued that the officers would not be testifying to reputation, but "pursuant to 608(a), it would be their opinion, based on interactions with [A.R.], and the knowledge that they've garnered during those investigations of dealing with her." The prosecution objected and argued that one instance involved A.R.'s decision not to pursue charges and another was protected under the rape shield statute. It further noted that A.R. admitted these false reports on cross-examination. The trial court again refused to admit the evidence stating that the "police department is not a community," and the officers' testimony would be based only on two incidents since one was barred under the rape shield statute.

B. Standard of Review and Applicable Law

¶ 12 We review a trial court's determination regarding the admissibility of evidence for an abuse of discretion. *People v. Lane*, 2014 COA 48, ¶ 21. The trial court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair." *People v. Campbell*, 2018 COA 5, ¶ 38 (citation omitted). The standard of reversal for the excluded witnesses' testimony is harmless error. *See People v. Ayala*, 919 P.2d 830, 833 (Colo. App. 1995). An error

is harmless if it "did not substantially influence the verdict or adversely affect the fairness of the proceedings." *Id.*

¶ 13 In general, courts favor the admission of relevant evidence and exclude evidence only "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." CRE 403; *see also Liggett v. People*, 135 P.3d 725, 731(Colo. 2006). Evidence of a person's character may not be admitted to show that the person acted in conformity therewith on a particular occasion. CRE 404(a); *People v. Goldfuss*, 98 P.3d 935, 937 (Colo. App. 2004). Exceptions to CRE 404(a) apply for limited purposes and in limited circumstances. *See People v. Gaffney*, 769 P.2d 1081, 1085-87 (Colo. 1989). As relevant here, the exception provided by CRE 608 permits the admission of opinion or reputation evidence to bolster or impeach the credibility of a witness. *Gaffney*, 769 P.2d at 1085-86.

¶ 14 Specifically, CRE 608(a) provides,

> *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible

only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

¶ 15    "Reputation testimony may be based on what the witness has heard in the community regarding the person's character." *Ayala*, 919 P.2d at 832.  "The 'community' may encompass the person's neighborhood, work, or social community." *Id.*  And that reputation "must be based on opinion held generally in a broad community" and "over a period of time." *Id.*  Several courts that have considered whether police officers may testify concerning the reputation of a witness associated with the criminal justice system have disallowed such testimony because "the criminal justice system is not a recognized or general community." *Id.*

¶ 16    "[O]pinion testimony is a personal assessment of character. The opinion witness is not relating community feelings, the testimony is solely the impeachment witness' own impression of an individual's character for truthfulness." *Honey v. People*, 713 P.2d 1300, 1302 (Colo. 1986) (quoting *United States v. Watson*, 669 F.2d 1374, 1382 (11th Cir. 1982)).  Opinion testimony regarding a witness' truthfulness on a specific occasion is inadmissible.  *See*

CRE 608(a); *see also Ayala*, 919 P.2d at 834; *Tevlin v. People*, 715 P.2d 338, 341 (Colo. 1986).

### C. Preservation

¶ 17 As a threshold matter, the parties dispute the preservation of Nelson's challenges to the law enforcement officers' testimony. The People concede that Nelson preserved the issue with respect to the two police officers but not with respect to Detective Ames. They contend that defense counsel only referred to A.R.'s alleged reputation within the police department and did not specify that he wanted to elicit an opinion from Detective Ames. We disagree.

¶ 18 As the People acknowledge, defense counsel stated that he was "laying the foundation for an opinion or — for reputation opinion testimony" during Detective Ames's questioning. During trial, defense counsel also made numerous references to *Ayala* and argued the distinction between reputation and opinion evidence. In response to an objection regarding reputation evidence, the trial court stated that "you could ask Ms. Ames if she has an opinion [to give about A.R.'s reputation in the community]." Defense counsel also asserted that the "People are conflating opinion and reputation

evidence." Therefore, we conclude this issue is properly preserved as to Detective Ames.

## D. Discussion

¶ 19    Nelson challenges the court's refusal to admit negative reputation testimony from Detective Ames and opinion testimony from Detective Ames and the two officers and argues that the court wrongly applied *Ayala* in reaching its decision.

¶ 20    In *Ayala*, the trial court permitted a police officer to provide reputation and opinion testimony concerning the confidential informant with whom he worked. *Ayala*, 919 P.2d at 832. The evidence revealed that the officer had supervised the informant on at least ten separate occasions involving work for two different police agencies. *Id.* The officer opined that the informant had a very good reputation for truthfulness among the agencies. *Id.* A division of this court concluded that the informant's association with two police organizations did not constitute a sufficient "community" upon which reputation testimony could be based. *Id.* at 833. But it found no error in the officer's opinion that the informant had a general character for truthfulness. *Id.* It noted that the officer did not testify about the informant's truthfulness on

a particular occasion, but he opined as to truthfulness generally, based on his personal relationship and experience with the informant. *Id.* at 834. The division explained that its different conclusions were based on the differing requirements underlying the admission of reputation and opinion evidence and the arguments made at the time of admission. *Id.*

¶ 21    As in *Ayala*, Nelson sought to introduce A.R.'s reputation for truthfulness within the Arvada Police Department. And consistent with *Ayala*, we conclude that reputation evidence cannot be based on the collective opinion of the law enforcement community because CRE 608 does not contemplate that kind of community. *See id.* at 832. Therefore, we discern no abuse of discretion in the trial court's ruling precluding it.

¶ 22    Similarly, we conclude that Nelson failed to lay a sufficient foundation to admit opinion testimony. As previously noted, Detective Ames had no personal knowledge of A.R. beyond two police reports. Thus, she had no basis for opining on A.R.'s general character for truthfulness and could only provide an opinion of her truthfulness on two specific instances of conduct. *See People v. Koon*, 724 P.2d 1367, 1371 (Colo. App. 1986) (ruling therapist's

opinion of a witness' truthfulness inadmissible because it referred to truthfulness on specific occasions); *see also State v. Pelletier*, 2020 MT 249, ¶ 17, 401 Mont. 454, 473 P.3d 991 (characterizing false reports as specific instances of conduct). And the same is true for the officer who interacted with A.R. on only one occasion. *See Honey*, 713 P.2d at 1302. It is a closer call concerning the officer who interacted with A.R. on more than one occasion. However, even assuming an error occurred, we find it harmless. During her trial testimony, A.R. never denied her interactions with the Arvada Police Department and admitted giving false information. Moreover, those previous reports were admitted into evidence without objection. Nelson has not explained, nor can we see, how he was prejudiced by the preclusion of this evidence. *See People v. Novotny*, 2014 CO 18, ¶ 14; *see also* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 23 Therefore, we affirm the court's ruling.

### III. Webpage Exhibit

¶ 24    Nelson next contends that the trial court erroneously excluded a webpage showing S.J.'s attempt to pursue a modeling career to impeach her conservative nature. We discern no error.

### A. Additional Facts

¶ 25    During cross-examination, defense counsel sought to question S.J. about her prior "aspiring career as an actress or a model." S.J. denied such aspirations in the following exchange:

> Q: [S.J.], did you ever sign up for an account on a website called exploretalent.com?
>
> A: No.
>
> Q: And so you never put a headshot on there in hopes that you could get some kind of a job either as an actress or a model?
>
> A: No.

¶ 26    After S.J. denied creating the account, counsel sought to impeach her with evidence regarding her profile on a modeling website. Counsel showed S.J. a webpage containing an older picture of her and her name. The trial court then questioned the relevance of the inquiry. Counsel explained that the prosecution had "spent a significant amount of time" establishing that S.J. was "very conservative, [and] very shy" due to her upbringing and that

12

S.J.'s modeling efforts refuted that characterization. Finding that there was no relevance to the line of questioning, the trial court disallowed the inquiry and ordered counsel to "move on."

## B. Standard of Review and Applicable Law

¶ 27 "A trial court has broad discretion in ruling on the admissibility of evidence." *People v. Beilke*, 232 P.3d 146, 149 (Colo. App. 2009). Thus, we review a trial court's evidentiary rulings for an abuse of discretion. *Dunlap v. People*, 173 P.3d 1054, 1097 (Colo. 2007). A trial court abuses its discretion when its evidentiary ruling "was manifestly arbitrary, unreasonable, or unfair." *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).

¶ 28 Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable. CRE 401. All relevant evidence is admissible subject to certain constitutional provisions, statutes, and rules of evidence. *People v. Cordova*, 293 P.3d 114, 118 (Colo. App. 2011).

¶ 29 Authentication is a condition precedent to the admissibility of physical evidence and is satisfied by presenting evidence sufficient to support a finding that the physical evidence is what its proponent claims it to be. CRE 901(a); *see also People v. Glover*,

13

363 P.3d 736, 739 (Colo. App. 2015). "The rationale is that in the absence of showing that the evidence is what its proponent alleges, the evidence is simply irrelevant." *People v. Rodriguez*, 2022 COA 11, ¶ 14 (quoting *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989)).

¶ 30    The proponent may satisfy this requirement by presenting extrinsic evidence under CRE 901. *See People v. Huehn*, 53 P.3d 733, 736 (Colo. App. 2002). The burden to authenticate presents a low bar; "only a prima facie showing is required." *Glover*, ¶ 13 (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)). Once the proponent meets this burden, the actual authenticity of the evidence and the effect of any defects go to the weight of evidence and not its admissibility. *See* CRE 104; *see People v. Lesslie*, 939 P.2d 443, 451 (Colo. App. 1996); *see also Colo. Citizens for Ethics in Gov't v. Comm. for Am. Dream*, 187 P.3d 1207, 1213 (Colo. App. 2008) ("Whether a proper foundation has been established is a matter within the sound discretion of the trial court . . . ."). CRE 901(b) contains a non-exhaustive list of methods to authenticate by extrinsic evidence including, but not limited to,

using testimony by a witness with knowledge to show that the matter is what it is claimed to be.

¶ 31　　As such, authenticity is a threshold requirement for admissibility. *People v. Baca*, 2015 COA 153, ¶ 26, *overruled on other grounds by Gonzales v. People*, 2020 CO 71.

## C. Discussion

¶ 32　　Nelson contends that the webpage directly contradicted S.J.'s attempts to attribute the numerous inconsistencies in her testimony to her conservative background and embarrassment when discussing personal matters with law enforcement. However, we conclude that defense counsel failed to properly authenticate the webpage and that it was inadmissible on this basis. *See Deutsche Bank Tr. Co. Ams. v. Samora*, 2013 COA 81, ¶ 38 ("An appellate court may affirm the trial court's ruling based on any grounds that are supported by the record.").

¶ 33　　Nelson offered no independent witness who could testify that S.J. created or used the account or who could say the webpage contained some distinctive evidence of S.J.'s use. S.J. denied creating the account and said the photo was from her Facebook profile when she "first opened it." Moreover, the webpage was

15

undated, had no followers, had no connections, and showed no evidence of ever having been used. Accordingly, we conclude the webpage was not properly authenticated and discern no abuse of discretion in the court's decision to preclude its admission. *See Rodriguez*, ¶ 14.

## IV. Disposition

¶ 34 The judgment is affirmed.

JUDGE GROVE and JUDGE LUM concur.